Durfee, Judge,
delivered the opinion of the court:
This is an appeal by the Assiniboine Tribes of Indians from a denial by the Indian Claims Commission of their motion to intervene as petitioners in a claim brought by the Blackfeet and Gros Ventre Tribes of Indians on August 9, 1951 under clauses (1), (3), (4), and (5) of section 2 of the Indian Claims Commission Act, 60 Stat. 1049, 25 U.S.C. § 70a, for additional compensation for lands ceded to the Government by these tribes under the Act of May 1, 1888, ch. 213, 25 Stat. 113. This claim is presently designated before the Commission as Docket 279-A.
The Indian Claims Commission did not state any grounds for its order denying the appellants Assiniboine Tribes’ motion to intervene. For this reason, it is impossible to consider questions specifically raised by the Commission’s order of denial, but the appeal raises several questions as to appellants’ right to intervene, essentially as to two basic issues: (1) Did the appellants Assiniboines own an interest in the subject matter of the pending claim in common with the petitioners Blackfeet and Gros Ventre Tribes which would be affected by a judgment in the present suit ? (2) Is the appellants’ motion to intervene in Docket 279-A filed August 7, 1957, before the Indian Claims Commission, barred by the statute of limitations, or by laches ?
If the appellants owned any interest in common with the petitioners in the lands ceded by both parties to the United States under the cession agreements of 1886 and 1887 ratified by the Act of 1888, they had the same initial right to assert a timely claim before the Indian Claims Commission as the petitioners. The question of the proportionate interest, if any, of the Assiniboine Tribes in the ceded lands involves an ultimate issue of fact not before us now on this appeal.
Under the cession agreements signed in 1886 and 1887, the appellants Assiniboine Tribes, the petitioners, Blackfeet and Gros Ventre Tribes, and other Indian tribes then living within the reservation set apart by the Act of April 15,1874, 18 Stat. 28, 29, ceded to defendant all their right, title and *139 interest to the lands within that reservation amounting to approximately 14,000,000 acres, for about 28 cents per acre. These agreements were ratified by the Congress in the Act of May 1,1888, supra.
The original petition by the Blackfeet and Gros Ventre Tribes in Docket 279-A before the Commission asserts that their interest in said cession, as of May 1, 1888, was equal in amount in the same proportions which petitioners’ total population bore to the population of all Indians then holding a valid interest in said reservation, and their claim is for that proportionate share of just compensation for the 14,000,-000 acres involved in the claim.
Defendant has alleged that the petitioners’ land claims in Docket 279-A have an entirely different historical background from the appellants; that petitioners claim different areas of land and a different interest in said lands from the land claim involved in appellants’ intervention in Docket 279-A. Therefore, defendant contends that there is no community of interest between these claims, and appellants’ plea of intervention amounts to a new claim by two new tribes which would greatly enlarge, complicate and further delay the litigation of the land issues involved in Docket 279-A.
The petitioners Blackfeet and Gros Ventre Tribes themselves originally moved to include the Assiniboines as petitioners in Docket 279-A in 1957, about six years after filing their own original petition in 1951, and shortly before the appellants moved to intervene. Both motions were denied by the Indian Claims Commission on October 21,1957, and the denial of the motion of the Assiniboines to intervene is now here on appeal insofar as it affects the Assiniboines.
Beginning in 1957, the petitioners and the appellants were both represented by the same law firm before the Indian Claims Commission, and before this court on the appeal, in the belief by this law firm that the proportionate common interests of both parties under the 1888 ratification of the prior cession agreements were not in conflict. In 1958 this law firm representing both petitioners and appellants, finally concluded that the Blackfeet and Gros Ventre Tribes were the sole owners of the tract which had been reserved to them and other tribes by the Treaty of 1855 and the Act of 1874, *140 and ceded to the Government in 1888 by the petitioners, tbe Assiniboines and other tribes. The firm then resigned its employment by the Assinboine Tribes and promptly reported this fact to the Burean of Indian Affairs, and also to this court on behalf of the Blackfeet and Gros Ventre Tribes in this appeal. On behalf of the petitioners, this law firm then moved to reopen the record before the Indian Claims Commission upon proposed findings of fact and brief that the petitioners owned 100 percent of so much of the area included in the 1855 Treaty, as was later included in the cession of 1888. This motion was granted by the Commission, and testimony has been taken on the record as reopened. This action by the Commission was taken after the Assiniboines had filed their appeal to this court from the Commission’s order denying their motion to intervene.
Whatever questions of interest, ownership or title may develop in Docket 279-A before the Indian Claims Commission upon the record which the Commission has reopened and taken further evidence, is not before us now. Before us now, as the basis for this appeal, is the record as it existed when the appeal was taken in May 1958 from the order of the Indian Claims Commission, denying intervention in Docket 279-A by the Assiniboines.
The original petition in Docket 279-A by the Blackfeet and Gros Ventre Tribes and the claim thereunder, is based upon the interest of the petitioners therein and alleged:
Petitioners’ interest in said cession as of May 1,1888, was equal in amount in the same proportion which petitioners’ total population bore to the population of all Indians then holding a valid interest in said reservation.
The Assiniboines were not parties to the Blackfeet Reservation Treaty of 1855 and derived no right, title or interest thereunder, or by claim of “immemorial possession” to the lands now under consideration. Assiniboine Indian Tribe v. United States, 77 Ct. Cl. 347, 370 (1933), cert. denied, 292 U.S. 606. In 1868 and 1870 the Assiniboines had been driven off their own reservation, granted under the Treaty of Fort Laramie in 1851, and had settled on the Blackfeet and Gros Ventre reservation. By Executive Order of July 5, 1873, 1 Kapp. 855, and the Act of April 15, 1874, 18 Stat. 28, this reservation was enlarged for the use of the Blackfeet and *141 Gros Ventre Tribes, other named tribes, “and such other Indians as the President may, from time to time, see fit to locate thereon.” Although there is no record before us of any executive action locating the Assiniboines on the Blackfeet and Gros Ventre Tribes reservation after the Act of 1874, the Assiniboines had, prior thereto, settled on and attached themselves to this reservation, and obtained supplies from the reservation agency. Assiniboine Indian Tribe v. United States, supra. The appellants Assiniboines thereafter resided on this 1874 reservation along with the Blackfeet and Gros Ventre Tribes, and were there in 1886. By the Act of May 15, 1886, 24 Stat. 29, the Secretary of the Interior was authorized to negotiate “with the various bands or tribes of Indians in northern Montana * * * for a reduction of their respective reservations.” The Assiniboine Tribes participated in these negotiations, and signed the agreements in 1886 and 1887, which were ratified by the Congress on May 1, 1888, ch. 213, 25 Stat. 113. As a result, the signatory tribes ceded about 14,000,000 acres to the Government for which it paid about 28 cents per acre to the tribes, including the Assiniboines. It is this payment which petitioners Blackfeet and Gros Ventre Tribes now allege in Docket 279-A before the Indian Claims Commission, was unconscionable consideration.
By the reduction of the size of the reservation under the 1886-1887 cession agreements ratified by the Congress in 1888, the appellants received their proportionate share of these same payments which were made to the Indian agencies of the new Fort Belknap and Fort Peck reservations, to which appellants were assigned as their permanent home. Act of 1888, supra.
The agreement of 1888 created a landed unit to which the plaintiff Indians contributed their reservation and the United States 5,575,680 acres. The Indians in virtue of this agreement, wherein consent was given to allocate the unit among the plaintiffs and the foreign Indians as the United States might see fit, put all the tribes upon an equal basis. The plaintiffs acquired their proportionate share of the added lands and the foreign Indians their proportionate share in the entire area, which of course included the plaintiffs’ contribution. The Government was intending an equitable and just *142 division of tbe estate and to this end it realized the rights of the plaintiffs. The plaintiffs constituted 54.3 percent of the entire Indian population placed upon the lands, and the foreign Indians 45.7 percent. * * *
* * * The lands added to the reservation by the United States totaled 5,575,680 acres. 54.3% of the same equals 3,027,594.24 acres. To this extent, in equity and fairness, the contribution of the United States entered in the creation of joint estate for the joint benefit of all the Indians. * * * [Blackfeet et al. Nations v. United States, 81 Ct. Cl. 101, 131, 132 (1935).]
From the record before us on this appeal, it is apparent that the appellants Assiniboine Tribes may have a proportionate claim in the subject matter of this suit, together with the petitioners, arising from their joint participation as parties to the agreements ratified by the Act of 1888. Their interest in the reservation lands upon which they were living was recognized in the cession agreements, to which they were signatory parties, and the Act of 1888 ratifying those agreements. To the extent of that recognized interest in the same lands for which the Blackfeet and Gros Ventres have petitioned the Indian Claims Commission for additional compensation, the Assiniboines may have a common interest with the Blackfeet and Gros Ventres sufficient to entitle them to intervene, if their petition for intervention is not untimely, or barred by the statute of limitations. Sec. 12, Indian Claims Commission Act.
On February 24, 1949, the Assiniboine Tribe of the Fort .Peck Reservation, Montana, and on April 26,1949, the Assini-boine Tribe of the Fort Belknap Reservation, contracted with two separate law firms to investigate, formulate and prosecute their claims under the Indian Claims Commission Act of 1946. These contracts were approved by the Commissioner of Indian Affairs, as required by law. One of the contracts made specific reference to the cession agreements ratified by the Act of 1888, supra, which are the basis of Docket 279-A. Following an unsuccessful effort[1] to recover from the United States on a completely different claim, in no way based on the cession agreements and the Act of 1888, supra, both of these law firms withdrew *143 as counsel in May 1956 and March 1957. Promptly thereafter, on July 18 and August 19, 1957, the appellants employed a successor law firm, which filed with the Indian Claims Commission the motion to intervene in Docket 279-A on August 7,1957. Clearly, the late filing of the motion to intervene was not the fault of the Assiniboine Tribes, who employed counsel in 1949 for this very purpose, with the express approval of the Commissioner of Indian Affairs. Under such circumstances, the Assiniboine Tribes had a right to believe that their interests and claims before the Commission would be completely represented by counsel, beginning in 1949, and there was no oversight, neglect or lack of due diligence on their part.
The original brief for intervenors and appellants in this appeal states: “There is no evidence, nor has there been any argument that the original litigants would suffer inconvenience from the intervention of the appellants.” This statement has particular force, as it was made by the same counsel that also represented the petitioners Blackfeet and Gros Ventre Tribes, “the original litigants at that time.” Since this law firm later believed there was a conflict in interest, it promptly resigned as counsel for the Assiniboines. In the brief later filed on behalf of the Blackfeet litigants by the same law firm, it is asserted that the evidence placed in the record before the Commission, following the appeal to this court, in no way jeopardized any rights the Assiniboines may have; that if it should be determined that the As-sinibomes had an interest in the area, “only a simple mathematical computation will be required to determine the extent of their interest.” It therefore appears that intervention by the appellants will not prejudice or further delay the case for the Blackfeet and Gros Ventre Tribes before the Commission. Clearly, the appellants under the circumstances are not guilty of laches as contended by the appellee.
Section 12 of the Indian Claims Commission Act, 60 Stat. 1049,1052, provides that:
LIMITATIONS
Sec. 12. The Commission shall receive claims for a period of five years after the date of the approval of this Act and no claim existing before such date but not *144 presented within such period may thereafter be submitted to any court or administrative agency for consideration, nor will such claim thereafter be entertained by the Congress.
Upon the record, as it existed when this appeal was taken, we conclude that the Assiniboine Tribes of Indians may have a common and undivided interest with the petitioners Blackfeet and Gros Ventre Tribes of Indians in the claim asserted in Docket 279-A before the Indian Claims Commission. That claim having been presented within the period specified in section 12 of the Indian Claims Commission Act, the appellee and the Commission have been apprised of all the material issues of law and fact relevant to the petition of intervention since the filing of the original and amended petitions. The appellants are not asserting a new or separate claim which would be untimely under section 12 of the Act. Their intervention after expiration of the statutory period relates back to the filing of the original petition in Docket 279-A on August 9', 1951, and is not barred by limitation. To bar the intervention of the Assiniboine Tribes because of a delay for which they were in no way responsible, would be to disregard the broad remedial intent of the entire Indian Claims Commission’s statute. They are entitled to a hearing on the merits of their claim.
The order of the Indian Claims Commission, dated October 21, 1957, denying the motion of the appellants, Assini-boine Tribes of Indians, to intervene in Docket 279-A, is reversed, with directions to grant the motion and permit the appellants to intervene as parties petitioner therein.

Reversed, and remanded for further proceedings.

 128 Ct. Cl. 617, cert. den. 348 U.S. 863.