### The UNITED STATES
#### v.
### The ASSINIBOINE TRIBES OF INDIANS, Residing Upon the Fort Belknap and Fort Peck Reservations, Montana.
#### Appeal No. 8-69.

United States Court of Claims.

July 15, 1970.

Howard G. Campell, Washington, D. C., with whom was Asst. Atty. Gen., Shiro Kashiwa, for appellant.

Marvin J. Sonosky, Washington, D. C., attorney of record, for appellees.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON APPEAL FROM THE INDIAN CLAIMS COMMISSION

COLLINS, Judge.

This case is on appeal from a decision of the Indian Claims Commission, Assiniboine Tribes of Indians v. United States, 21 Ind.Cl.Comm. 310 (1969), awarding judgment for plaintiffs (appellees) in the amount of $3,108,506.40. Earlier the Commission had entered findings of fact, opinion, and an interlocutory judgment of $3,108,506.40, which was made subject to offsets. Blackfeet & Gros Ventre Tribes of Indians v. United States, 18 Ind.Cl.Comm. 241 (1967). The Commission determined at 21 Ind.Cl.Comm. 312 that no offsets could be allowed either for past consideration paid under the act of 1888 or for certain gratuities claimed by defendant (appellant).

The sequence of events which eventually led to the filing of this suit are as follows: Sometime between 1868 and

1870, the Assiniboine Tribes of Indians voluntarily began occupying a portion of the 1855 Blackfoot Reservation, having been driven from their Fort Laramie Treaty lands by the Sioux Indians.[1] In 1874, a statutory reservation was established by Congress out of the lands being occupied by the Blackfeet, Gros Ventre, Assiniboine, and Sioux,[2] the latter two being squatters on the land of the first two. The Assiniboine were not mentioned in this act; instead, it merely provided that the land was "set apart for the use and occupation of the Gros Ventre, Piegan, Blood, Blackfoot, River Crow, and *such other Indians as the President may, from time to time, see fit to locate thereon,* * * *." (Emphasis added.)

In 1888, the above-mentioned reservation consisting of 14,969,156[3] acres was ceded to the United States by the Indians.[4] In return for their share of the land ceded, the Assiniboine received $1,242,796.18 (about $0.29 an acre) as consideration.

In 1933, in a case unrelated to the present one, the Assiniboine received a judgment in the amount of $3,238,970 for the loss of their Fort Laramie Treaty lands from which they had been driven by the Sioux prior to their occupation of part of the Blackfoot Reservation. Assiniboine Indian Tribe v. United States, 77 Ct.Cl. 347 (1933), cert. denied, 292 U.S. 606, 54 S.Ct. 772, 78 L. Ed. 1467 (1934). However, the judgment was made subject to reduction for allowable offsets, which the court found to be $4,227,474.56. Included in the total amount of offsets was the $1,242,796.18 paid the Assiniboine under the act of 1888. Since the amount of offsets far exceeded the amount of the judgment, the court concluded that the Assiniboine were not entitled to any recovery for the loss of their Fort Laramie Treaty lands.

In 1951, the Blackfeet and Gros Ventre initiated action before the Indian Claims Commission to recover additional compensation for the land ceded to the Government in 1888. The claim was based on clauses (1), (3), (4), and (5) of the Indian Claims Commission Act, 25 U.S.C. § 70a (1964). The Assiniboine sought to intervene as petitioners in this action, but their motion was denied by the Indian Claims Commission. Thereafter, they appealed to this court which ruled that they did have an interest in the lands ceded in 1888 and were entitled to intervene. Blackfeet & Gros Ventre Tribes of Indians v. United States, 162 Ct.Cl. 136 (1963). The matter was returned to the Commission which determined that the rights and interests of the Assiniboine in the land were created under the 1888 act and not the 1874 act.[5] The Commission entered judgment for the Blackfeet and Gros Ventre together and separate judgments for the Assiniboine and Sioux. Judgment was entered for the Blackfeet and Gros Ventre in the amount of $11,-125,606.40, covering 13,907,008 acres; for the Sioux in the amount of $2,-364,216.80, covering 2,955,271 acres; and for the Assiniboine in the amount of $3,108,506.40 (about $0.80 an acre), covering 3,885,633 acres. These judgments were subject to the consideration paid and to all gratuitous offsets to which the tribes would be entitled under the Indian Claims Commission Act. The items of offsets and consideration were settled with the Blackfeet and Gros Ventre and with the Sioux, so that these tribes received stipulated judgments respectively in the amounts of $8,679,814.92 and $1,161,354.41. Blackfeet & Gros Ventre Tribes of Indians v.

1. Blackfeet & Gros Ventre Tribes of Indians v. United States, 18 Ind.Cl.Comm. 241, 247 (1967).

2. Act of April 15, 1874, ch. 96, 18 Stat. 28.

3. One of defendant's arguments is that 20,747,912 acres of land were actually ceded and not 14,969,156 as stipulated in the 1888 act.

4. Act of May 1, 1888, ch. 213, 25 Stat. 113.

5. Blackfeet & Gros Ventre Tribes of Indians v. United States, 18 Ind.Cl.Comm. 241, 314 (1967).

United States, 19 Ind.Cl.Comm. 363, 365 (1968).

However, settlement could not be reached with the Assiniboine, and the case was referred to the Commission which determined: (1) that the consideration ($1,242,796.18) paid to the Assiniboine in 1888 had already been used up entirely as an offset in the 1933 litigation (77 Ct.Cl. 347); and (2) that, considering the nature of the claim and the course of dealings between the parties, the Government should not be allowed the benefit of any of its claimed gratuitous offsets.[6] It is this decision of the Indian Claims Commission and the accompanying final order of June 30, 1969 (which order also incorporates the findings of fact and opinion of the Commission at 18 Ind.Cl.Comm. 241 (1967)), which the Government is now appealing to this court.

Both parties have indicated in their briefs that there are four main issues involved in this case. Therefore, for the sake of clarity, we will direct ourselves to these four issues in the same order as they are presented in the briefs.

## I.

■ Appellant's first claim is the so-called "duplicate acres award" claim. The amount of land ceded by the combined Indian tribes in 1888 was found to be 14,969,156 acres.[7] However, in 1967 the Indian Claims Commission awarded judgment to the four Indian tribes in amounts covering a total of 20,747,912 acres.[8] Based on these figures, appellant claims that it had to pay twice for 5,778,756 acres. Appellees do not deny that the total acreage compensated for by the Government in 1967 is greater than that ceded in 1888. However, appellees urge that this is a matter relating strictly to the award made to the Blackfeet and Gros Ventre and not to the Assiniboine, and that, since the Blackfeet and Gros Ventre judgment was settled by the parties,[9] appellant should be precluded from raising the matter in this case, which deals only with the award to the Assiniboine.

It has already been well established that the Blackfeet and Gros Ventre were entitled to 54.3 percent of the land ceded in 1888, and that the Assiniboine and Sioux were entitled to 45.7 percent.[10] However, instead of compensating the Blackfeet and Gros Ventre for 54.3 percent of the 14,969,156 acres, the Indian Claims Commission determined that the two tribes were entitled to compensation for 100 percent of 13,021,610 acres, which represents that portion of the land ceded in 1888 covered by the 1855 treaty (which established the original Blackfoot Reservation)[11] plus 885,398 acres, which is 54.3 percent of the remaining portion of the 1888 act cession not covered by the 1855 treaty.[12] This meant that the Blackfeet and Gros Ventre were being compensated for a total of 13,977,008 acres. On the other hand, the Assiniboine and Sioux together received their pro rata share (45.7 percent) of the 1888 act cession, which came to 6,840,904 acres. These figures show that the extra, 5,778,756 acres, over

6. Assiniboine Tribes of Indians v. United States, 21 Ind.Cl.Comm. 310, 312 (1969).

7. Blackfeet & Gros Ventre Tribes of Indians v. United States, 18 Ind.Cl.Comm. 241, 246, 257–58 (1967) (findings 6, 15).

8. The Blackfeet and Gros Ventre were to be compensated for 13,907,008 acres; the Assiniboine, 3,885,633 acres; and the Sioux, 2,955,271 acres. Blackfeet & Gros Ventre Tribes of Indians v. United States, 18 Ind.Cl.Comm. 241, 322 (1967).

9. The judgment was reduced from $11,125,-606.40 to $8,679,814.92. Blackfeet &

Gros Ventre Tribes of Indians v. United States, 19 Ind.Cl.Comm. 363 (1968).

10. Blackfeet, Blood, Piegan, & Gros Ventre Nations or Tribes of Indians v. United States, 81 Ct.Cl. 101, 132 (1935); Blackfeet & Gros Ventre Tribes of Indians v. United States, 18 Ind.Cl.Comm. 241, 257–58 (1967) (findings 14–15).

11. Treaty with the Blackfoot Indians, Oct. 17, 1855, 11 Stat. 657.

12. Blackfeet & Gros Ventre Tribes of Indians v. United States, 18 Ind.Cl.Comm. 241, 257 (1967) (findings 13–14).

which appellant claims there was a duplicate award, were the result of the award to the Blackfeet and Gros Ventre and not to the Assiniboine or Sioux. *The Assiniboine did not receive any portion of the duplicate award.* Consequently, this is an issue which definitely should not have been raised at this time since we are concerned solely with the award made to the Assiniboine. The award made to the Blackfeet and Gros Ventre was made at the same time as the award in this case, but it was settled in a different proceeding. Therefore, appellant, by settling the judgment for the Blackfeet and Gros Ventre, is now precluded from raising the issue in this case, which concerns only the Assiniboine Tribes of Indians.

## II.

Next appellant contends that it was never the intent of the Government to give the Assiniboine any vested interest in the land ceded by the act of 1888. Instead, it argues that because the Assiniboine were physically present on the reservation and since they had been receiving their rations from the Fort Belknap Agency and the Fort Peck Agency, the Government bestowed upon them an interest in the reservation simply as a gift or gratuity. Accordingly, the consideration paid them for the cession of this land interest was likewise a gratuity. Since the consideration paid the Assiniboine was a gratuity, appellant questions the right of the tribe to contest the amount.

The position of the appellees is that they received a vested interest in the reservation as "such other Indians" under the 1874 act—which interest was recognized and confirmed by the 1888 act. Appellees further contend that even though they were not formally located on the reservation by the President as "such other Indians" under the act of 1874, such a formal order was not necessary since location on a reservation can be implied. Healing v. Jones, 210 F.Supp. 125 (D.Ariz.1962), aff'd, 373, U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703

(1963). Appellees also devote a large portion of their brief to numerous instances in which Congress and various Government agencies exercised federal jurisdiction and administrative control over the Assiniboine tribes while they were residing on the Blackfoot Reservation. Thus, they claim that these positive actions by the Government indicate that they were regarded as the owners and possessors of a part of the reservation.

Without going into a detailed discussion of all the instances of governmental action mentioned by appellees, we find that the question of whether the Assiniboine had a vested interest in the reservation has already been substantially answered by this court in other cases dealing with the same cession of land. For instance, it was stated in Blackfeet, Blood, Piegan, & Gros Ventre Nations or Tribes of Indians v. United States, 81 Ct.Cl. 101, 131 (1935):

> The agreement of 1888 created a land unit to which the plaintiff Indians contributed their reservation and the United States 5,575,680 acres. The Indians in virtue of this agreement, wherein consent was given to allocate the unit among the plaintiffs and the foreign Indians as the United States might see fit, *put all the tribes upon an equal basis.* * * * [Emphasis added.]

In another part of the opinion, it was stated:

> * * * It must not be overlooked that the act of May 1, 1888 (25 Stat. 113), while not in form a treaty, was one in legal effect. The plaintiffs by assenting to the terms of the act approved the division of the proceeds, *recognized the rights of the foreign Indians involved, and voluntarily for a good consideration granted the rights which accrued to all.* [Emphasis added.]

*Id.* at 139–140; *see* Blackfeet & Gros Ventre Tribes of Indians v. United States, 162 Ct.Cl. 136, 141–142 (1963). The Commission in its opinion of this

case at 18 Ind.Cl.Comm. 315–16, stated very conclusively:

> The parallel found in this case is the Act of May 1, 1888, which ratified the agreements of 1886 and 1887 and thereby ratified the participation by the Sioux and Assiniboine in those Agreements. This is the first affirmative action taken by defendant towards recognizing an interest in the Sioux and Assiniboine to the 1874 reservation as distinguished from defendant's negative action by its failure to remove them from the reservation after they had voluntarily attached themselves thereto.

> It seems clear that the action of defendant in 1888 is sufficient to constitute a recognition of the rights of the Sioux and Assiniboine in the reservation created by the Act of 1874. It was a course of action begun by a voluntary attachment by the Sioux and Assiniboine and culminating in an *affirmative act on the part of defendant which was sufficient to indicate that they considered the Sioux and Assiniboine to have acquired a tribal or group interest in the reservation.* [Emphasis added.]

*See* 18 Ind.Cl.Comm. at 257–58 (finding 15). These statements indicate that both this court and the Indian Claims Commission recognized the act of 1888 as bestowing upon the Assiniboine an interest in the reservation comparable to that of the Blackfeet and Gros Ventre.

■ Further proof can be found in the minutes of a Sioux council meeting where it was stated to the Indians:

> And in treating with you we state in the outset that we recognize your right to this land, and we propose to treat with you as having equal rights in this reservation with all the other

Indians; that is, the Assiniboines, Gros Ventre, and Blackfeet.

Blackfeet & Gros Ventre Tribes of Indians v. United States, 18 Ind.Cl.Comm. 241, 256 (1967). Also, the fact that the Assiniboine were not included in the title of the act of 1888 is not indicative of a lack of legislative intent to include the appellees in the act. In fact, this court stated in Crow Nation v. United States, 81 Ct.Cl. 238, 279 (1935): "The designation of the territory as a 'reservation' of the Gros Ventres, Piegans, Bloods, Blackfeet, and River Crows was descriptive only, and carried no title to the lands other than the right to reside thereon * * *." What is more relevant than the title of the act is the fact that the Assiniboine were signatories to the act, which is a strong indication that they were intended by Congress to be parties with a vested interest in the reservation land. The fact that the Assiniboine were not mentioned in the body of the 1888 act is also of no significance when one realizes that not even the Blackfeet or Gros Ventre were specified by name in the act.

■ Appellant contends that the congressional intent to accord to the Indians a vested right in the reservation must be clear and explicit.[13] We feel that the result of the 1888 act, which was signed by the Assiniboine and which awarded to the Assiniboine compensation for their portion of the land taken, is that Congress recognized appellees as having acquired a vested interest in the reservation. This indication of congressional intent is made even more clear and explicit when one considers the fact that Congress knew of the presence of the Assiniboine on the Blackfoot Reservation; failed to take any steps to remove the Indians; and, in fact, appropriated money for provisions, supplies,

---

13. Appellant relies on the following cases for support on this point: Tee-Hit-Ton Indians v. United States, 348 U.S. 272, 278–279, 75 S.Ct. 313, 99 L.Ed. 314 (1955); Hynes v. Grimes Packing Co., 337 U.S. 86, 104, 69 S.Ct. 968, 93 L.Ed. 1231 (1949); Sac & Fox Tribe of Indians v. United States, 315 F.2d 896, 897, 161 Ct.Cl. 189, 192–193, cert. denied, 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed.2d 165 (1963); Minnesota Chippewa Tribe v. United States, 315 F.2d 906, 911, 161 Ct.Cl. 258, 267 (1963).

clothing, and other items for the use of the Assiniboine on the reservation. With factors such as these for support, it could even be said, based on the case of Healing v. Jones, *supra,* that the Assiniboine had impliedly been settled on the reservation as "such other Indians" under the act of 1874.

Accordingly, we find that the Government's contention that the award to the Assiniboine under the 1888 act was purely a gratuity is without support in the record. Instead, based on all the facts surrounding the settlement of the Assiniboine on the reservation prior to 1888 and based on the past opinions of this court, we conclude that the Commission was correct in finding that appellees owned an undivided interest in the land ceded by the act of 1888.

### III.

The third claim by appellant and the one which was dealt with primarily by the Indian Claims Commission at 21 Ind.Cl.Comm. 310 (1969) concerns the question of whether the Government is entitled to an offset for part of the consideration paid to appellees under the act of 1888. Reviewing the facts for a moment, the Assiniboine were awarded $1,242,796.18 in 1888 as consideration for their portion of the reservation ceded. This amount was included in the total offsets ($4,227,474.56), which were used to wipe out a 1933 judgment for appellees in the amount of $3,238,970. The Indian Claims Commission ruled that the entire $1,242,796.18 had been used up in the 1933 case, so that there was no consideration left which could be applied as an offset in this case.

Appellant's argument is that there is nothing in the 1933 decision to show that *all* of the 1888 consideration was used to offset the amount of the 1933 judgment. Consequently, it feels that we must assume that all the items of offset were applied proportionately to satisfy the judgment. *See* McCauley v. United States, 2 Ind.Cl.Comm. 134 (1952). This would mean that the remaining $988,504.56 which was not applied against the judgment would contain a portion of each of the items of offset. Appellant contends, therefore, that it is entitled to use that portion of the $988,504.56 which comprises the leftover consideration as a credit against the judgment in this case.

Appellees rely primarily on the "first in, first out" theory, which is that the oldest debts in point of time are extinguished first.[14] Since it is evident that the 1888 act consideration was one of the oldest items included in the total offsets, appellees contend that there is no doubt but that the $1,242,796.18 was absorbed entirely by the 1933 decision. The Assiniboine also rely somewhat on the theory adopted by the Commission which is that Congress in the second jurisdictional act[15] directed the Court of Claims to deduct all the 1888 act consideration from any award made in the 1933 litigation. Assiniboine Tribes of Indians v. United States, 21 Ind.Cl. Comm. 310, 312 (1969).

■ While we do not agree with the reasoning of the Commission that the second jurisdictional act required the deduction of all 1888 act consideration from the 1933 judgment, we do concur in the result reached by the Commission, namely, that appellant should not be al-

---

14. This was the theory applied by the Indians Claims Commission in a sort of interim decision entitled "Final Award to Assiniboine Tribes, Intervenors." Blackfeet & Gros Ventre Tribes of Indians v. United States, 19 Ind.Cl.Comm. 361 (1968).

15. S.J.Res. 167, 71st Cong., 2d Sess., 46 Stat. 531 (1930), reads in part as follows:

"* * * *Provided, however,* That if the courts shall award damages for land appropriated by the said treaty of 1855 and/or the said Act of Congress of 1874, the United States shall be allowed credit for any sum or sums paid the Assiniboine Indian Nation under the Act of Congress of May 1, 1888."

lowed to offset any of the consideration paid to appellees in 1888. Our concurrence in the result of the Commission is based upon our adherence to the "first in, first out" theory.

At the outset, it should be made perfectly clear that we do not subscribe strictly to the "first in, first out" theory *in all cases*—but only in cases where the result reached is consistent with justice and equity. Appellees would have us follow what they consider the general rule in this area, which is that "In the absence of an agreement or instruction to the contrary, payments should be applied to the extinguishment of those items or claims which are earliest in point of time, unless justice and equity demand a different appropriation, * * *." 40 Am.Jur. Payment § 132 (1942). While accepting this statement of the general rule, we prefer to emphasize the rule as stated in United States v. Kirkpatrick, 22 U.S. (9 Wheat.) 720, 737, 6 L.Ed. 199 (1824) that "[T]he law will apply the payments according to its own notions of justice." *See* Standard Sur. & Cas. Co. v. United States, 154 F. 2d 335, 337 (10th Cir. 1946). We realize, of course, that the rules just cited were promulgated in relation, not to Indian offset claims, but to debtor-creditor relationships involving running accounts. However, in an offset situation the relation between Indian tribe and Government becomes akin to a regular debtor-creditor relationship, so that we do not feel it improper to apply the same general principles.

The fact that the 1888 claim was the earliest in point of time is not really disputed by appellant. Consequently, we will not spend time trying to prove this particular point. Instead, we will simply adopt what the Indian Claims Commission said in Blackfeet & Gros Ventre Tribes of Indians v. United States, 19 Ind.Cl.Comm. 361, 362 (1968):

> The $1,242,796.18 paid the Assiniboine by defendant under the 1888 Act was expended for their benefit between the fiscal years of July 1, 1888 through June 30, 1900 along with an additional amount constituting a total of $2,372,284.82. The balance of the $4,227,474.56 was expended after July 1, 1900. The consideration under the 1888 Act must therefore be treated as the oldest of the obligations of the Assiniboine to defendant.

Since it has now been established that the 1888 act compensation was the first of the claimed total offsets to be expended, it remains to be decided whether, in this case, the application of the "first in, first out" theory is consistent with principles of justice and equity. For reasons to be hereinafter stated, we conclude that it is.

Unlike the gratuitous offsets in this case, the 1888 act consideration *must be taken* as a credit by the Government. There is no discretion to be exercised in regard to the consideration as there is with the gratuities. This point is not disputed by either party and is made clear by the opinion of this court in Assiniboine Indian Tribe v. United States, 77 Ct.Cl. 347, 377 (1933), where it was stated:

> We therefore conclude that the defendant is entitled to offset *all payments* made for the benefit of the plaintiff tribe under the act of 1888 against any sum which might be charged against the Government on account of the appropriation of the lands ceded to plaintiff by the Fort Laramie Treaty. [Emphasis added.]

Consequently, if we were to follow appellant's theory in this case, there would be no question but that the Government would be entitled to an offset for the leftover consideration.

However, by following appellant's view of the case, we would be saying, in effect, that in 1933 the offsets consisted of a lesser amount of consideration and a greater amount of gratuities, and, in the instant case, we would be allowing offsets consisting of a greater amount of consideration and a lesser amount of gratuities. Thus, in the present case, the Government would not be required

to prove a greater amount of its offsets, have to prove under the Assiniboine view of the case. Under appellees' view, the 1888 act consideration would have been entirely used up, so that the Government in this case would be required to prove a greater amount of its offset, all of which would be gratuities. Since the obligation is on the Government to prove its offsets, United States v. Seminole Nation, 173 F.Supp. 784, 793, 146 Ct.Cl. 171, 184 (1959); Menominee Tribe of Indians v. United States, 118 Ct.Cl. 290, 326–327 (1951), and since there is no definite indication by the 1933 case as to which items of the total offsets were actually used as credits against the judgment, we conclude that justice and fairness requires that appellant be required to prove as many of its offsets as possible in this case. To rule otherwise would prejudice the position of the Assiniboine since their award would definitely be reduced by the amount of the leftover consideration. Such action would amount to prejudice since there would be no way of saying for certain that such a reduction was definitely justified. This, of course, is due to the failure of this court to fully explain in 1933 which items of the offsets were being applied as credits against the judgment.

On the other hand, we do not feel that a decision for the Assiniboine would unduly prejudice the Government since it is obliged to prove its offsets anyway. Thus, to require the Government to obtain a reduction in the award by having to prove that it is entitled to certain gratuitous offsets does not seem unreasonable.

Appellant relied heavily on the case of McCauley v. United States, 2 Ind.Cl. Comm. 134 (1952) ("Kaw" formula), for authority to the effect that where a court fails to identify which offsets are being applied to satisfy a judgment, then each item of offset should be applied proportionately. Without going into a detailed discussion of that case, it is sufficient to point out that the "Kaw" case was concerned only with gratuitous offsets and not consideration. Since our decision in this case is predicated upon the existence of both gratuities and consideration as offsets, it is obvious that the "Kaw" case cannot be used as persuasive authority in this case.

## IV.

Appellant's fourth claim is related to the third claim in that the Government is alleging that it is entitled to reduce the judgment in this case by the amount of the leftover gratuitous offsets. (The third claim was concerned with leftover consideration.) The Commission, in its opinion, treated this question of gratuitous offsets in somewhat of a passing manner when it stated: "It will be noted that this Commission, upon review of the entire course of dealings between the parties, has concluded that it cannot *in good conscience* sanction the offset of any of the particular gratuities claimed by defendant." (Emphasis added.) Assiniboine Tribes of Indians v. United States, 21 Ind.Cl.Comm. 310, 312 (1969). It is this manner in which the offsets were denied by the Commission that appellant finds objectionable. Appellant obviously contends that it is arbitrary and improper for the Indian Claims Commission to totally deny gratuitous offsets, which are authorized by the Indian Claims Commission Act, section 2, 25 U.S.C. § 70a (1964), without showing that the offset items have been examined and explaining the reasons for the denial.

Appellees contend, first of all, that the question of whether gratuities should be allowed as offsets is a matter totally within the discretion of the Indian Claims Commission, and that appellant has been unable to show an abuse of this discretion. Appellees also contend that the decision of the Commission is fully supported by its findings which conclude that "the course of dealings and accounts between the United States and the plaintiffs does not in good conscience warrant the allowance of any of the claimed offsets." Assiniboine

Tribes of Indians v. United States, 21 Ind.Cl.Comm. 310, 314 (1969).

The Indian Claims Commission Act, section 2, 25 U.S.C. § 70a (1964), specifically provides with respect to gratuities:

> [T]he Commission may also inquire into and consider all money or property given to or funds expended gratuitously for the benefit of the claimant and if it finds that the nature of the claim and the entire course of dealings and accounts between the United States and the claimant in good conscience warrants such action, may set off all or part of such expenditures against any award made to the claimant, * * *.

Thus, this provision permits the Commission to exercise a certain amount of discretion in determining whether gratuitous payments should be offset against awards made to Indian tribes. As long as the Commission does not abuse this discretion by arbitrarily refusing to allow gratuitous offsets without considering the nature of the claim and the course of dealings between the parties, then this court should not interfere with such a determination.

Appellant has failed to point out in its briefs the various facts and circumstances which would tend to make the decision of the Commission arbitrary. Instead, it bases its claim of arbitrariness on the failure of the Commission to enumerate its reasons for denying the offsets. We do not feel that such an omission by the Commission, in itself, is sufficient to warrant a reversal by this court. There is nothing which requires the Commission to make explicit, affirmative findings in support of its decisions, as long as it makes it clear that it has fully examined "the nature

of the claim and the entire course of dealings and accounts" and has reached its decision in good conscience. Red Lake, Pembina & White Earth Bands v. United States, 164 Ct.Cl. 389, 395–396 (1964). The burden should be on the appellant to prove that the decision of the Commission is arbitrary, rather than the burden being on the appellees to justify and support the Commission's determination. Thus, we do not feel that the Government has fully met its burden in regard to this issue.

Even though we do not feel it necessary to examine in detail the course of dealings between the parties (since appellant has not fulfilled its burden in this area), we find that a quick review of the facts reveals several reasons justifying the decision of the Commission not to allow any of the gratuities. First of all, there can be no doubt but that the amount of consideration (about $0.29 per acre) originally paid to the Assiniboine (along with the Blackfeet, Gros Ventre, and Sioux) was unconscionable. (This point is not contested by appellant.) Secondly, the Government was allowed to take this consideration (along with other consideration and gratuities) to use as a complete setoff against an award for the taking of the Assiniboine Fort Laramie Treaty lands (6,477,940 acres). Not only did appellees not receive any compensation for the taking of their land because of the offsets, but they also did not receive credit for any interest, even though it would have been appropriate for this court to award interest in 1933.[16] In addition, the mere fact that the Assiniboine are just now receiving a conscionable consideration, after 82 years, for the 1888 act cession of their land is another point worth considering in determining whether appellant should be allowed to offset any of the leftover gratuities. There are many

---

16. The Assiniboine brought an action to try and recover interest as a measure of just compensation on their award in 1933, but their claim was denied by the Indian Claims Commission. Assiniboine Indian Tribe v. United States, 2 Ind.Cl.Comm. 272 (1952). On appeal, this decision was affirmed by this court on the basis of the doctrine of res judicata. Assiniboine Indian Tribe v. United States, 121 F.Supp. 906, 128 Ct.Cl. 617 (1954).

other factors in the course of dealings between the parties worth considering,[17] but these are sufficient to show that the decision of the Commission on this claim was not arbitrary but was fully justified by the "nature of the claim" and the "course of dealings and accounts" between the parties.

Since appellant refers several times in its briefs to the case of Delaware Tribe of Indians v. United States, 21 Ind.Cl. Comm. 18 (1969), which has since been decided by this court (United States v. Delaware Tribe of Indians, 427 F.2d 1218, 192 Ct.Cl. —— (June 1970)), we feel compelled to mention it in passing. The *Delaware* case was concerned with the disallowance of offsets based on a 5-percent formula. We held in that case that gratuities would have to be considered on an item-by-item and a case-by-case basis and not on the basis of an arbitrary 5-percent rule. We are unable to find anything in the present case which runs contrary to our decision in *Delaware*. There is nothing to show that the items of offset in this case were not considered on an item-by-item basis and then rejected as a whole based on the nature of the claim and the entire course of dealings. This, we feel, is consistent with our decision in *Delaware* and is fully supported by the finding of the Commission that "the course of dealings and accounts between the United States and the plaintiffs does not in good conscience warrant the allowance of *any* of the claimed offsets." (Emphasis added.)

## V.

In conclusion, even though our reasoning differs somewhat from that of the Commission in regard to certain claims, we agree in full with the final determination of the Commission, holding appellees entitled to a net judgment in the amount of $3,108,506.40. The decision of the Indian Claims Commission is affirmed.

Affirmed.

---

17. For instance, the special jurisdictional act under which the 1933 case was decided by this court, 77 Ct.Cl. 347, required the offset of any sums "paid or expended" by the United States for the tribe's benefit, and this language was interpreted as requiring the offset of payments made by the United States out of the tribe's own money deposited with the Government.

Thus, the Indians were required in 1933 to give credit for their own funds when expended for their benefit. These were in no sense "gratuities" as we now understand that term, so that it now seems fair to take account of this fact in evaluating the defendant's current right to the offset of gratuities under the standards of the Indian Claims Commission Act.