The SIOUX TRIBE OF INDIANS

v.

The UNITED STATES.

No. 74.

United States Claims Court.

Aug. 29, 1984.

See also Cl.Ct., 3 Cl.Ct. 536.

Arthur Lazarus, Jr., Washington, D.C., for plaintiff; Marvin J. Sonosky and William Howard Payne, Washington, D.C., of counsel.

Edward A. Passarelli, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant.

SUMMARY JUDGMENT OPINION—I

PAYMENTS ON THE CLAIM

YOCK, Judge.

This case involves compensation for Sioux tribal lands acquired by the United States under the Treaty of April 29, 1868, 15 Stat. 635. The plaintiff, the Sioux Tribe of Indians, has moved for summary judgment to deny treaty-related offsets, known as payments on the claim. This motion is but one of six summary judgment[1] motions brought by both parties in the offset portion of this case. Plaintiff here moves that the Government be denied any payments on the claim offsets, against a $43,949,700 interlocutory land valuation award. Plaintiff contends that as a result of this Court's predecessor's (the U.S. Court of Claims) decision construing the 1868 Treaty to be "in major part" a treaty of cession, *United States v. Sioux Tribe*, 222 Ct.Cl. 421, 425, 427, 616 F.2d 485, 487, 489 (1980), that the remaining obligations flowing from the treaty must therefore relate to peace. The plaintiff thus moved to disallow virtually all Government payments on the claim offsets arguing that these offsets result from federal treaty obligations undertaken not on the claim for land but for peace.

The Government has responded that the law of the case establishes the 1868 Treaty as a treaty of cession. Accordingly, the defendant argues that it is entitled to all payments on the claim, offsetting those treaty obligations undertaken in exchange for the ceded tribal land.

Therefore, the issue before the Court in this summary judgment motion, is the nature of the treaty in its entirety and the purpose for which the Government undertook its treaty obligations. If, as the Government argues, payments, goods and services were undertaken by the United States as consideration for acquired tribal lands, those obligations are deductible from the award as payments on the claim. If, however, as the plaintiff argues, those payments were exchanged for the peace the

Sioux Tribe promised to maintain, no such offsets would be allowed.

For the reasons cited herein, the plaintiff's motion is denied.

*Facts*

The issues giving rise to this action, or portions thereof, have been in litigation for the past sixty years. *See Sioux Tribe v. United States*, 84 Ct.Cl. 16, 19 (1936), *cert. denied*, 302 U.S. 717, 58 S.Ct. 37, 82 L.Ed. 554 (1937). This particular case has been directly litigated for more than thirty years. Throughout the long history of this complex case, the plaintiff has claimed compensation for Sioux tribal lands the United States acquired under the Treaty of April 29, 1868, 15 Stat. 635. The 1868 Treaty, signed at Fort Laramie, in what is now the State of Wyoming, effected the cession of tribal lands in North Dakota, South Dakota, Montana, Wyoming and Nebraska. The Treaty provisions affirmatively established the Great Sioux Reservation in South Dakota, and obligated the Federal Government to provide the tribes with payments, goods and services. It is those payments, goods and services which are at issue here.

The Indian Claims Commission (Commission), after hearing the plaintiff's arguments, held that the 1868 Treaty was primarily a peace treaty in which the tribal members were unaware that the Federal Government would be acquiring tribal lands. In addition, the Commission also ruled that the United States undertook treaty obligations in exchange for the peace the Sioux promised to maintain. Since those payments were exchanged for peace and not for the land received, the Commission ruled that the United States could not offset any payments on the claim against the Sioux land judgment. *Sioux Tribe v. United States*, 42 Ind.Cl.Comm. 214, 230, 256, 257 (1978). The Commission, finding the actions of the United States between 1875 and 1877 to be "grossly dis-

---

1. Summary Judgment Opinions—II, III, IV, V and VI will be forthcoming in Sioux Docket No.

74. For ease of reference, this opinion will be referred to as Sioux 74—I.

honorable," also denied the United States any gratuitous offset deductions.[2] *Sioux Tribe, supra,* 42 Ind.Cl.Comm. at 232, 256, 257.

After disallowing payments on the claim offsets and gratuitous offsets, the Commission awarded the tribes a $43,949,700 interlocutory land valuation award. *Sioux Tribe, supra,* 42 Ind.Cl.Comm. at 257.

On appeal, the Court of Claims reversed the Commission's reading of the treaty. The court found the 1868 agreement to be primarily a treaty of cession rather than a treaty of peace. The court held that payments, goods and services claimed as offsets by the Government were "at least in substantial part, compensation for the land the Indians ceded to the Government." *Sioux Tribe, supra,* 222 Ct.Cl. at 425, 616 F.2d at 487. In reversing the Commission decision barring gratuitous offsets,[3] the court stated that the Government was entitled to an opportunity to show which expenditures were payments on the claim for land and which were gratuitous offsets. These issues were then remanded to the Court of Claims' trial division for reconsid-

eration. In remanding, the court let stand the interlocutory land valuation award of $43,949,700 in favor of the Sioux Tribe, but specifically directed the trial judge to determine in the first instance what the amount of the offsets against the award should be. *Sioux Tribe, supra,* 222 Ct.Cl. at 433, 616 F.2d at 492.

Plaintiff's motion, and this opinion, address only those issues concerning the payments on the claim offsets. Gratuitous offsets have been separately briefed and will be separately decided.

### Discussion

Plaintiff argues that the Court of Claims directed this Court to determine which federal obligations assumed under the treaty relate to peace and which obligations were undertaken in exchange for land. *See,* Sioux Tribe's Brief on Meaning of the 1980 Sioux Case, dated Aug. 16, 1982, at 10. Plaintiff bases its argument upon the court's holding that the Sioux Treaty was "in major part" or "at least in substantial part" a treaty of cession. *Sioux Tribe,*

---

**2.** Gratuitous offsets and payments on the claim are two different types of statutory offsets authorized by the Indian Claims Commission Act, 25 U.S.C. § 70a (1976).

Payments on the claim offsets relate to treaty obligations undertaken by the United States in exchange for the benefit received. In this case, the benefit received by the United States was the ceded Sioux tribal land exclusive of the Great Sioux Reservation set up by the 1868 Treaty. In order to be offset as payments on the claim, defendant's financial obligations must have been undertaken for the exclusive benefit of the Sioux in exchange for tribal land. Obligations assumed for any other reason, such as the maintenance of peace, may not be offset as payments on the claim. 25 U.S.C. § 70a (1976). *See also Prairie Band of Pottawatomie Tribe of Indians v. United States,* 215 Ct.Cl. 1, 9–17, 564 F.2d 38, 42–47 (1977); *Quapaw Tribe v. United States,* 1 Ind.Cl.Comm. 652, 665 (1951) *aff'd* as to this, 128 Ct.Cl. 45, 120 F.Supp. 283 (1954). Payments on the claim are considered mandatory offsets. Indian Claims Commission Act, 25 U.S.C. § 70a, *See United States v. Assiniboine Tribes,* 192 Ct.Cl. 679, 693, 428 F.2d 1324, 1331 (1970).

Gratuitous offsets are expenditures for which the Government "has not assumed any obligation, direct or incidental, as a party to the treaty or * * * pursuant to the intention of the treaty."

*Sioux Tribe v. United States,* 105 Ct.Cl. 725, 793, 64 F.Supp. 312, 327, vacated and remanded, 329 U.S. 685, 67 S.Ct. 364, 91 L.Ed. 602 (1946), *aff'd on reh'g,* 112 Ct.Cl. 50, 78 F.Supp. 793 (1948), *cert. denied,* 337 U.S. 908, 69 S.Ct. 1045, 93 L.Ed. 1720 (1949). Gratuities are never undertaken as treaty-related consideration; they are Government expenditures made simply for the benefit of the tribe. These offsets are not mandatory, but discretionary. In deciding whether to allow gratuitous offsets, courts must consider whether "the entire course of dealings and accounts between the United States and the claimant in good conscience warrants such action." 25 U.S.C. § 70a (1976).

**3.** The Court of Claims ruled that the Commission erred in holding that the 1875–1877 actions of the United States, did not in good conscience warrant the offsetting of any gratuities. Although the Commission has considerable discretion concerning gratuities, the court said that Commission considerations must reflect the *entire* course of dealings between the United States and the Indians. The Commission erred in considering only a two year period for which the tribe had already been compensated in the Black Hills case, *United States v. Sioux Tribe,* 222 Ct.Cl. 421, 431–33, 616 F.2d 485, 491–92 (1980).

*supra,* 222 Ct.Cl. at 425, 427, 616 F.2d at 487, 489. Obligations incurred under the noncession provisions of the treaty must therefore relate to peace and civilization, according to the Sioux. After engaging in a thorough, article-by-article treaty analysis, plaintiff argues that the Government undertook virtually none of its obligations in exchange for tribal land. Accordingly, plaintiff moves that the United States be denied the payments on the claim for the land.

While reasonable persons may differ about the treaty's "cession" and "peace" provisions and the resulting application of those provisions to Government expenditures, this Court's predecessor established the law of the case. We are thus bound by the law of the case to deny plaintiff's summary motion.

■ The doctrine of the law of the case "expresses the practice of courts generally to refuse to reopen what has been decided." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912); *see United States v. Turtle Mountain Band,* 222 Ct.Cl. 1, 5–7, 612 F.2d 517, 520–21 (1979). This principle provides a finality to legal issues decided on appeal. *Short v. United States,* 228 Ct.Cl. 535, 542, 661 F.2d 150, 154 (1981); *Turtle Mountain Band, supra,* 222 Ct.Cl. at 8, 612 F.2d at 521 (1979). A legal issue determined by an appellate court in the same case "is binding on the trial court throughout the case." *Department of Natural Resources and Conservation of the State of Montana v. United States,* 1 Cl.Ct. 727, 733 (1983). Although not an inexorable command, the rule adopted on appeal is to be applied, "right or wrong, absent exceptional circumstances, in the disposition of the lawsuit." *Turtle Mountain Band, supra,* 222 Ct.Cl. at 6, 612 F.2d at 520 quoting *Schwartz v. NMS Industries, Inc.* 575 F.2d 553, 554 (5th Cir.1978); *See E.D.S. Federal Corporation v. United States,* 2

Cl.Ct. 735, 737 (1983); *Northern Helex Co. v. United States,* 225 Ct.Cl. 194, 200–01, 634 F.2d 557, 561 (1980).

■ Treaty interpretation is a question of law not a matter of fact. *Strong v. United States,* 207 Ct.Cl. 254, 264, 518 F.2d 556, 563, *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975); *Citizen Band of Potawatomi Indians v. United States,* 179 Ct.Cl. 473, 482, 391 F.2d 614, 618 (1967), *cert. denied,* 389 U.S. 1046, 88 S.Ct. 771, 19 L.Ed.2d 839 (1968); *Minnesota Chippewa Tribe v. United States,* 161 Ct.Cl. 258, 262, 315 F.2d 906, 908 (1963). The Court of Claims has held, as a matter of law, that the 1868 Treaty was in major part a treaty of cession. *United States v. Sioux Tribe,* 222 Ct.Cl. 421, 425, 427, 616 F.2d 485, 487, 489 (1980). This Court has adopted the decisions of the Court of Claims as binding precedent.[4] *Gindes v. United States,* 740 F.2d 947 (Fed.Cir.1984); *South Corp. v. United States,* 690 F.2d 1368 (Fed.Cir.1982). Thereafter, this Court is bound by the law of the case doctrine to follow that construction.

■ Although well reasoned, the plaintiff's offset assertions, in effect, merely restated its original argument, rejected earlier by the Court of Claims. In *United States v. Sioux Tribe, supra,* 222 Ct.Cl. 421, 616 F.2d 485 (1980), the court ruled against the plaintiff's contentions that the 1868 Treaty was one of peace not cession, and that the asserted Government offsets were not payments on the claim:

The critical inquiry, therefore, is the character of the 1868 treaty: Was its basic purpose and effect the termination of hostilities between the Sioux and the United States and the maintenance of peace between them? We conclude that the treaty cannot be so characterized. To the contrary, the language of the treaty, the history of its negotiation, and

---

**4.** The Court of Claims functioned as an appellate tribunal for the Indian Claims Commission. *See* 25 U.S.C. § 70s(b) (1976). Under the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (1982), the Court of Claims'

trial functions were assumed by this Court. Appellate functions were assumed by the newly created Court of Appeals for the Federal Circuit. *See Gindes v. United States, supra.*

the provisions of similar treaties negotiated with other Indian tribes at the same time indicate that the Sioux treaty was in major part a treaty of cession. Thus, the payments the government undertook to make and the goods and services it undertook to supply to the Sioux were, at least in substantial part, compensation for the land the Indians ceded to the government.

*Sioux Tribe v. United States, supra,* 222 Ct.Cl. at 425, 616 F.2d at 487. Such language clearly precludes this Court from granting plaintiff's motion to disallow defendant's offset claims on the basis of peace. The Tribe's assertion "that none of the financial obligations undertaken by the United States in the 1868 Sioux Treaty was compensation for a land cession," as stated in the Sioux Tribe's Brief on Meaning of the 1980 Sioux Case, *supra,* dated August 16, 1982, directly contravenes the law of the case.

This Court reads the Court of Claims *Sioux Tribe* decision (222 Ct.Cl. 421, 616 F.2d 485 (1980)) as wiping out any possibility of using the "peace" argument as a defense to the Government's assertion of *any* of its payments on the claim offsets. Plaintiff may have a host of other defenses, but the "peace" defense is precluded by the law of the case doctrine. Therefore, the plaintiff's summary judgment motion in this matter will be denied.

Denial of plaintiff's motion does not mean, however, that the Government should not be realistic in its assertion of its offset claims. While this Court is precluded from summarily disallowing all Government claims, many of the Government offsets may still be disallowed in future motions or during any subsequent trial. The Court of Claims left it to this Court to determine "whether the award should be reduced." *Sioux Tribe v. United States, supra,* 222 Ct.Cl. at 433, 616 F.2d at 492. Thus, this Court is free to determine in future decisions, which payments on the claim offsets are valid and which are not.

It is this Court's present view that the Government should press its offset claims on a more realistic basis. At some point, limitations must be established. For instance, the Government should consider limiting expenditure claims to the thirty years following treaty proclamation. This thirty-year period reflects the outside time limit established in the various treaty provisions. As an example, Article VII establishes that educational benefits "continue not less than twenty years." Likewise, Article IX allows the United States, upon additional compensation to the tribe, to withdraw promised expert assistance "at any time after ten years from the making of this treaty." The longest fixed period of time, established in Article X, provides for various goods to be delivered to reservation agency houses on "the first day of August, each year, for thirty years."

The establishment of a time limitation based upon treaty provisions is not without precedent. In *Navajo Tribe v. United States,* 224 Ct.Cl. 171, 198, 624 F.2d 981, 995 (1980), the court addressed educational obligations provided under the June 1, 1868 Treaty between the Navajo Tribe and the United States, 15 Stat. 667. Article VI of that treaty states: "The provisions of this article to continue for not less than ten years." The Court of Claims upheld the trial judge's decision that absent strong contradictory evidence that Article VI "must be taken literally to mean that the defendant's obligations under the Article were not to continue for more than 10 years." *Navajo Tribe v. United States, supra,* 224 Ct.Cl. at 198, 624 F.2d at 995.

It should also be noted that the Article VI educational provisions of the Navajo Treaty are strikingly similar to those in Article VII of the Sioux Treaty. The difference being that the Sioux Treaty provision contains a time limit of not less than twenty years.

Claims for agricultural and instructional expenditures such as those contained in Articles VI, VIII and X might also be limited to a reasonable period of time. *See, Sioux Tribe v. United States,* 86 Ct.Cl. 299, 307–08 (1938), *cert. denied,* 306 U.S. 642, 59 S.Ct. 582, 83 L.Ed. 1042 (1939); *Sioux*

*Tribe v. United States,* 89 Ct.Cl. 31, 38 (1939). For example, Article VIII of the 1868 Treaty with the Sioux Indians allows agricultural goods to be provided for four years to each tribal member undertaking farming. The Court of Claims, in previously ruling that Article VIII "was not a continuing obligation of the Government," established that the ten year period during which Congress appropriated funds for seeds and agricultural implements "was a reasonable period of time." *Sioux Tribe v. United States, supra,* 89 Ct.Cl. at 31, 38. The Article X agreement to furnish cow and oxen to tribal members undertaking farming was also limited by the Court of Claims to the reasonable period of ten years. *Sioux Tribe v. United States, supra,* 86 Ct.Cl. at 307–08.

In light of the above, establishing a thirty-year limitation on all Government payments on the claim would not be unreasonable. Any claim extending beyond the thirty year limit may be provable by the defendant as a gratuitous offset, provided the gratuity is not disallowed for other reasons. Moreover, the thirty-year limitation appears more than reasonable for it extends well beyond later congressional action superceding the 1868 Treaty. Treaty obligations and duties continue only as long as a treaty is in force. *See Sioux Tribe v. United States,* 105 Ct.Cl. 725, 794, 64 F.Supp. 312, 327 (1946), vacated and remanded, 329 U.S. 685 (1946) *aff'd on reh'g,* 112 Ct.Cl. 50, 78 F.Supp. 793 (1948), *cert. denied,* 337 U.S. 908, 69 S.Ct. 1045, 93 L.Ed. 1720 (1949).

Under the Act of February 28, 1877, 19 Stat. 254, the General Allotment Act, February 8, 1887, 24 Stat. 388, and the Act of March 2, 1889, 25 Stat. 888, the United States acquired major portions of the Great Sioux Reservation established by the 1868 Treaty. *See Sioux Nations v. United States,* 220 Ct.Cl. 442, 601 F.2d 1157, *aff'd* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1979). While not dispositive, it is this Court's present view that new and different Government obligations commenced with the passage of such legislation. This new set of responsibilities superceded obligations flowing from the 1868 Treaty, effectively ending any expenditure claims.

The Government may also wish to review its various kinds of claims. For instance, it is this Court's present thinking that no agency expenses will be allowed as offsets. *See,* Indian Claims Commission Act, 25 U.S.C. § 70a (1976). *See also, Sioux Tribe v. United States, supra,* 105 Ct.Cl. at 796–97, 64 F.Supp. at 328–29. Furthermore, any claimed offsets related to food, rations and provisions will also be disallowed under the 1974 amendment to the Indian Claims Commission Act. *See* Act of October 27, 1974, Pub.L. No. 93–494, 88 Stat. 1499, amending 25 U.S.C. § 70a.

At the same time, not all of the Government's claims appear to be unreasonable. The defendant's land adjustment credit claims regarding the inadvertent addition of the Ponca Land to the Great Sioux Reservation appear, at this point, to be reasonable.[5]

In any event, the Court at this point simply wishes to encourage the parties to review their respective positions so that a realistic assessment of this case can be made. The end to be achieved, of course, is the final termination of this exceedingly complex and time consuming case for the benefit of all concerned parties.

### CONCLUSION

This Court is precluded by the law of the case from granting plaintiff's motion for summary judgment, seeking to disallow the defendant's payments on the claim offsets. Thus, plaintiff's motion is hereby denied.

---

**5.** This point is the subject of another summary judgment motion and will be discussed in detail in that forthcoming decision.