**UNITED STATES**

**v.**

**The KIOWA, COMANCHE AND APACHE TRIBES OF INDIANS.**

**Appeal No. 3–57.**

United States Court of Claims.

Oct. 8, 1958.

W. Braxton Miller, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for appellant, the United States. Ralph A. Barney, Washington, D. C., was on the briefs.

J. Roy Thompson, Jr., Washington, D. C., for cross-appellant, Kiowa, Comanche and Apache Tribes of Indians. W. C. Lewis and Frank Miskovsky, Oklahoma City, Okl., were on the brief.

## PER CURIAM.

The appellant, the United States, has moved for reconsideration in connection with three points relative to the court's opinion of July 16, 1958, 163 F.Supp. 603, in the matter of offsets.

As its first ground, the United States urges that the 1,104 depredations judgments paid out of the United States Treasury were proper offsets from the judgment rendered by the Indian Claims Commission in favor of the Tribes, that the Commission erred in denying such payments as offsets, and that the court erred in affirming the decision of the Commission on this point.

The Indian Claims Commission Act makes the following provision with respect to the allowance of offsets:

> "In determining the quantum of relief the Commission shall make appropriate deductions for all payments made by the United States on the claim, and for all other offsets, counterclaims, and demands that would be allowable in a suit brought in the Court of Claims under section 145 of the Judicial Code (36 Stat. 1136; 28 U.S.C. sec. 250), as amended; the Commission may also inquire into and consider all money or property given to or funds expended gratuitously for the benefit of the claimant and if it finds that the nature of the claim and the entire course of dealings and accounts between the United States and the claimant in good conscience warrants such action, may set off all or part of such expenditures against any award made to the claimant, except that it is hereby declared to be the policy of Congress that monies spent for the removal of the claimant from one place to another at the request of the United States, or for agency or other adminis-

trative, educational, health, or highway purposes, or for expenditures made prior to the date of the law, treaty or Executive Order under which the claim arose, or for expenditures made pursuant to the Act of June 18, 1934 (48 Stat. 984), save expenditures made under section 5 of that Act, or for expenditures under any emergency appropriation or allotment made subsequent to March 4, 1933, and generally applicable throughout the United States for relief in stricken agricultural area, relief from distress caused by unemployment and conditions resulting therefrom, the prosecution of public work and public projects for the relief of unemployment or to increase employment, and for work relief (including the Civil Works Program) shall not be a proper offset against any award." 25 U.S.C.A. § 70a.

The depredations judgments in question were judgments rendered by this court pursuant to the Act of March 3, 1891, 26 Stat. 851, which conferred jurisdiction on this court to inquire into and determine finally all claims for property of United States citizens taken or destroyed by Indians without cause and not returned or paid for. Section 6 of the Act of March 3, 1891, made the following provisions for the payment of any judgment so rendered:

"That the amount of any judgment so rendered against any tribe of Indians shall be charged against the tribe by which, or by members of which, the court shall find that the depredation was committed, and shall be deducted and paid in the following manner: First, from annuities due said tribe from the United States; second, if no annuities are due or available, then from any other funds due said tribe from the United States, arising from the sale of their lands or otherwise; third, if no such funds are due or available, then from any appropriation for the benefit of said tribe, other than appropriations for their current and necessary support, subsistence and education; and, fourth, if no such annuity, fund, or appropriation is due or available, then the amount of the judgment shall be paid from the Treasury of the United States: *Provided*, That any amount so paid from the Treasury of the United States shall remain a charge against such tribe, and shall be deducted from any annuity, fund or appropriation hereinbefore designated which may hereafter become due from the United States to such tribe."

All of the judgments in question were paid pursuant to the fourth alternative of section 6, i. e., from the Treasury of the United States, and it is the Government's contention that under the proviso of section 6 the amounts so paid are a charge against the Tribe and therefore are legal offsets to be deducted from the present judgment as a "fund" which has become "due from the United States to such tribe."

In the Act of June 6, 1900, 31 Stat. 672, the land which was the subject of the instant claim before the Indian Claims Commission was ceded to the United States for the sum of $2,000,000, plus interest thereon. That Act provided that none of the money or interest thereon "which is, by the terms of the said agreement, to be paid to said Indians shall be applied to the payment of any judgment that has been or may hereinafter be rendered under the provisions of" the Act of 1891, *supra*.

Under the provisions of 25 U.S.C.A. § 126 (Act of July 15, 1870, 16 Stat. 335, 360, R.S. § 2098), no claim for Indian depredations could be paid until Congress should make a special appropriation therefor. Accordingly, each annual appropriation act (with one exception), commencing with the Act of July 28, 1892, 27 Stat. 282, 319, contained a provision for the payment of the depredation judgments in language substantially as follows:

"For payment of judgments of the Court of Claims in Indian depre-

dation cases, * * * or so much thereof as may be necessary to pay and discharge such judgments as have been rendered against the United States, after the deductions required to be made under the provisions of section six of the act approved March third, eighteen hundred and ninety-one, entitled 'An act to provide for the adjustment and payment of claims arising from Indian depredations,' shall have been ascertained and duly certified by the Secretary of the Interior to the Secretary of the Treasury, which certification shall be made as soon as practicable after the passage of this act, and such deductions shall be made according to the discretion of Secretary of the Interior, having due regard to the educational and other necessary requirements of the tribe or tribes affected, and the amounts paid shall be reimbursed to the United States at such times, and in such proportions, as the Secretary of the Interior may decide to be for the interests of the Indian service."

The one exception mentioned above was the Act of August 26, 1912, 37 Stat. 595, 617–618, and in that Act Congress did not give the Secretary of the Interior discretion as to whether or not the United States would be reimbursed for this depredation judgment paid out of the Treasury of the United States.

In the years following the Act of March 3, 1891, the Secretary of the Interior exercised the first discretion placed in him by that act and certified that there were no funds of the Tribe available for payment of depredations "due regard being had to their educational and other necessary requirements." The Secretary also exercised the further discretion conferred upon him by the subsequent appropriation acts (except for the year 1912) and decided that it was not in the "interests of the Indian service" to reimburse the United States for the depredation judgments which had been paid out of the Treasury of the United States.

In the fiscal year 1912 a depredation judgment in the sum of $719 was paid by the United States and in the appropriation act authorizing such payment the Secretary was not specifically given discretion to withhold reimbursement in "the interests of the Indian service."

The Indian Claims Commission decided that the depredation judgments paid out of the Treasury of the United States were not legal offsets because, although by the 1891 Act they were made a charge against the Tribe to be deducted from any sum becoming due from the United States to the Tribe, Congress had vested sole discretion in the Secretary of the Interior to determine whether or not such reimbursement should be made from tribal funds out of annual appropriations for such purposes. It was the opinion of the Commission that the depredation judgments were not legal offsets and that the Commission had no jurisdiction to review the actions of the Secretary taken in the exercise of his discretion. With respect to the $719 paid by the United States in 1912, the Commission ruled that this payment did not constitute a legal offset because, under the Act of June 6, 1900, supra, money paid to the Indians for the land ceded under that Act could not and should not be used for the payment of depredations judgments. The Commission suggested that this same ground would apply equally to all depredation judgments which had been paid by the United States.

■ We are of the opinion that the Commission was correct in holding that the reimbursement of the United States from tribal funds for payment of the Indian depredation judgments was a matter committed by Congress to the sole discretion of the Secretary of the Interior and that he had exercised his discretion as to all but one such judgment. We are further of the opinion that as to all but the 1912 depredation judgment appropriations, the issue of reimbursement is closed.

With respect to the payment of the $719 in 1912, the Secretary lacked discretion to withhold reimbursement in the

"interests of the Indian service" and unless the judgment in this case can be said to be money which by the terms of the 1900 agreement was to be paid to the Indians, that $719 would, under the proviso of section 6 of the 1891 Act, be a charge against the Tribe and therefore a proper offset. We think it is not such a proper offset.

■ . The claim in this case is one arising under section 2 of the Indian Claims Commission Act, i. e., a claim resulting where the agreement of 1900 between the Indians and the United States is revised on the ground of unconscionable consideration. While it is clear that in the 1900 Act Congress may have been speaking about the $2,000,000, plus interest which the Indians would receive for their land when it spoke about the "money or interest thereon which is, by the terms of the said agreement, *to* be paid to said Indians," we are of the opinion that the judgment in this case *is* money which is to be paid to the Indians pursuant to the 1900 agreement revised on the ground that the consideration provided for therein was unconscionable; otherwise there would be no basis for the claim. Accordingly, we hold that none of the depredation judgments paid by the United States and not reimbursed by the Secretary of the Interior, are legal offsets applicable to the judgment of the Commission in this case.

■ The United States further asks for a reconsideration on the matter of the allowability as an offset of cash payments to individual indigent Indians. The Commission held that payments to individual Indians were not proper offsets against a judgment in favor of the tribe and this court affirmed that holding. Defendant points to the fact, that in our decision in Quapaw Tribe v. United States, 120 F.Supp. 283, 128 Ct.Cl. 45, the court held that the payment of board and funeral expenses of indigent Indians was a proper offset. In the same decision, however, this court held that presents to individual Indians did not constitute proper offsets against a judgment rendered on a tribal claim.

Obviously, the two rulings were inconsistent and this inconsistency was discovered and briefed to the Commission in the course of the trial of the instant case. The Commission rightly determined to follow our ruling with respect to presents to individual Indians, and we affirmed that determination. To the extent that our holding is in conflict with our ruling in the Quapaw case respecting board and funeral expenses to individual Indians, that holding is overruled.

Finally, the United States contends that the Commission erred in refusing to apply the practice of prorating expenditures for the joint benefit of all the tribes under a single agency. Inasmuch as no offsetable items have been established by the United States in this case, there is no need for the court to pass on the issue of proration.

For the reasons set forth above, the motion of the United States for reconsideration is denied.

It is so ordered.