**The SIOUX TRIBE OF INDIANS**

v.

**The UNITED STATES.**

No. 74.

United States Claims Court.

Feb. 11, 1985.

Arthur Lazarus, Jr., Washington, D.C. for plaintiff. Marvin J. Sonosky and William Howard Payne, Washington, D.C. of counsel.

Edward A. Passarelli, Washington, D.C., with whom was Asst. Atty. Gen., F. Henry Habicht, II, Washington, D.C. for defendant.

## SUMMARY JUDGMENT OPINION—III
### LAND ADJUSTMENT OFFSET

YOCK, Judge.

This case involves the appropriate valuation to be placed upon Sioux tribal land acquired by the United States in the Treaty of April 29, 1868 (1868 Treaty), 15 Stat. 635. The defendant, in this summary judgment motion, seeks to offset the value of land inadvertently transferred to the plaintiff, the Sioux Tribe of Indians, by the 1868 Treaty. The defendant's motion is one of six summary judgment motions brought by the parties in the offset portion of this very old and complex case.[1]

Specifically, the defendant urges this Court to allow a payment on the claim offset[2] of $2,769,021.40, representing the value of the treaty land the Federal Government inadvertently conveyed to the plaintiff at the time of the 1868 Treaty. This amount reflects a seventy-three cents ($.73) per-acre valuation of the transferred land.

---

1. In the interest of clarity, this Court has required the parties to separately brief six different summary judgment issues. *See Sioux Tribe of Indians v. United States*, No. 74 (Cl.Ct. May 14, 1982) (Trial Judge's Post-Trial Order). These six issues for summary judgment are: payment on the claim offsets, gratuitous offsets, land adjustment claims, res judicata/collateral estoppel, the use of vouchers to prove offset claims, and other miscellaneous issues. This Court has previously published its summary judgment opinions on the issues of payment on the claim offsets and gratuitous offsets. *See Sioux Tribe of Indians v. United States*, 6 Cl.Ct. 91 (1984) (Summary Judgment Opinion—I);

*Sioux Tribe of Indians v. United States* (1985) (Summary Judgment Opinion—II), 7 Cl.Ct. 468.

2. Payment on the claim offsets and gratuitous offsets are two different types of statutory offsets authorized by the Indian Claims Commission Act, 25 U.S.C. § 70a (1976). Payment on the claim offsets relate to treaty obligations undertaken by the Federal Government in exchange for the benefit received, while gratuitous offsets relate to Federal Government expenditures which are undertaken solely for the benefit of the tribe and which are unrelated to treaty obligations.

The plaintiff opposes the Federal Government's land adjustment offset on the basis that the added land was not given as consideration under the 1868 Treaty. The plaintiff argues that this element is a prerequisite to the allowance of an offset as a payment on the claim. The plaintiff further contends that, at best, the subject land was transferred as a gratuity, rather than as a payment on the claim. In the alternative, the plaintiff objects to the fact that the defendant measures the value of the offset by calculating the fair market value of the land at the time of the transaction. Instead, the plaintiff claims that the offset value should be limited to the amount that the Federal Government paid for the added land. Thus, the plaintiff concludes that the maximum land adjustment offset should be $341,063.

For the reasons cited herein, the defendant's motion to allow an offset for the transferred land is granted.

### Facts

During the last 60 years, the plaintiff has initiated significant litigation involving claims arising out of the 1868 Treaty. *See, e.g., Sioux Nation of Indians v. United States*, 220 Ct.Cl. 442, 446–47, 601 F.2d 1157, 1159, *aff'd*, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980); *Sioux Tribe of Indians v. United States*, 85 Ct.Cl. 181, *cert. denied*, 302 U.S. 717, 58 S.Ct. 37, 82 L.Ed. 554 (1937); *Sioux Tribe of Indians v. United States*, 84 Ct.Cl. 16 (1936). This particular case, seeking adequate compensation for the tribal land ceded to the United States under the 1868 Treaty, has entered its 35th year of litigation.[3]

Throughout the long history of this case, the plaintiff has claimed that the defendant provided inadequate compensation for the Sioux tribal land ceded to the United States under the 1868 Treaty. The 1868 Treaty, one of several treaties signed at Fort Laramie, resulted in the cession of vast tribal

land, in what is now the States of North Dakota, South Dakota, Montana, Wyoming and Nebraska, to the Federal Government. In return, the treaty provisions established the Great Sioux Reservation in South Dakota and obligated the Federal Government to provide the tribes with payments, goods, services, and land.

In 1978, the Indian Claims Commission (Commission) awarded the Sioux Tribe $43,-949,700, as compensation for the value of their land ceded under the Treaty of 1868. *Sioux Tribe v. United States*, 42 Ind.Cl. Comm. 257 (1978). However, construing the treaty to be one of peace, rather than cession, the Commission denied the defendant any land-related payment on the claim offsets. In addition, the Commission denied the defendant any gratuitous offsets, based upon the defendant's grossly dishonorable dealings with the plaintiff between 1875 and 1877. *Sioux Tribe v. United States*, 42 Ind.Cl.Comm. 214, 232 (1978). The Commission stated that such conduct "so taint[s] the course of dealings between the United States and the Sioux that we cannot in good conscience offset any gratuitous expenditures by the United States against any Sioux award in this docket." *Sioux Tribe v. United States, supra*, 42 Ind.Cl.Comm. at 232.

On appeal from the above decision of the Commission, the United States Court of Claims reversed the Commission's decision to deny the defendant any payment on the claim offsets and any gratuitous offsets. *United States v. Sioux Tribe*, 222 Ct.Cl. 421, 616 F.2d 485 (1980). In so holding, the Court of Claims found that the 1868 Treaty was primarily a treaty of cession, rather than a treaty of peace, and, as a result, reasoned that payment on the claim offsets were, "at least in substantial part, compensation for the land the Indians ceded to the government." *United States v. Sioux Tribe, supra*, 222 Ct.Cl. at 425, 616 F.2d at 487. Thus, the court reversed the Commis-

---

**3.** On August 15, 1950, the plaintiff filed its original claim with the Indian Claims Commission. In 1978, upon termination of the Indian Claims Commission, this case was transferred to the

United States Court of Claims, which on its termination in 1982, transferred the case to the United States Claims Court.

sion's decision denying all of the Federal Government's payment on the claim offsets.

The Court of Claims also reversed the Commission's decision to deny the defendant any gratuitous offsets. In so holding, the court, while recognizing that the Commission had considerable discretion to determine whether to allow gratuitous offsets, held that such a determination must reflect the "entire course of dealings" between the Federal Government and the Sioux.[4] *United States v. Sioux Tribe, supra,* 222 Ct.Cl. at 431, 616 F.2d at 491. The Court of Claims noted, however, that the allowance of such gratuitous offsets is contingent on the entire course of dealings between the defendant and the plaintiff warranting the allowance of such offsets. *United States v. Sioux Tribe, supra,* 222 Ct.Cl. at 432, 616 F.2d at 491–92. *See also United States v. Emigrant New York Indians,* 177 Ct.Cl. 263, 287 (1966); *Sioux Tribe of Indians of the Lower Brule Reservation v. United States,* 161 Ct.Cl. 413, 416, 315 F.2d 378, 380, *cert. denied,* 375 U.S. 825, 84 S.Ct. 66, 11 L.Ed.2d 57 (1963).

The Court of Claims further decided that the Federal Government was entitled to an opportunity to show which expenditures were payments on the claim for land and which were gratuitous offsets. The case was subsequently remanded to the Court of Claims' trial division, now the U.S. Claims Court, for appropriate reconsideration of the amount of Federal Government offsets, if any, which should be allowed against the land valuation award. *United States v. Sioux Tribe, supra,* 222 Ct.Cl. at 433, 616 F.2d at 492. In remanding the case, however, the Court of Claims let stand the Commission's interlocutory land valuation award of $43,949,700 in favor of the plaintiff.

4. Further, the court noted that the Sioux had previously been awarded full compensation for the Federal Government's improper conduct between the years 1875 and 1877. *United States v. Sioux Tribe, supra,* 222 Ct.Cl. at 432, 616 F.2d at 491–92.

5. The term "Royce Areas" refers to Royce's maps in the 18th Annual Report of the Bureau

*Discussion*

### I.  The Land Involved

The defendant here seeks an offset for land incorporated into the Great Sioux Reservation under the 1868 Treaty. The land involved includes:

(1) a total of 1,314,644 acres, including (a) Ponca reservation land, and (b) ceded Ponca tribal land the Federal Government acquired from the Ponca Tribe of Indians by the Treaty of March 12, 1858, 12 Stat. 997;

(2) Royce Areas[5] 443 and 468, totalling 627,806 acres. The United States acquired this land from the Yankton Sioux Tribe by the Treaty of April 19, 1858, 11 Stat. 743; and

(3) a seven percent interest in the Sioux Fort Laramie lands the United States also acquired from the Yankton Sioux Tribe by the Treaty of April 19, 1858, 11 Stat. 743.

### A.  Ponca Reservation and Tribal Land

In 1834, Congress designated all land west of the Missouri River and north of Texas as "Indian country." Trade and Intercourse Act of 1834, 4 Stat. 729. "Indian country" was officially closed to all but Indian tribes until subsequent legislation opened the land to non-Indian settlement. *See, e.g.,* the Kansas-Nebraska Act of 1854, 10 Stat. 277.

Four years after the area was opened to non-Indian settlement, the Ponca Tribe of Indians ceded portions of its tribal land to the Federal Government. *See* Treaty of March 12, 1858, 12 Stat. 997. In return, the Federal Government granted to the Ponca Tribe reservation land in what is now northeast Nebraska and southeast

of American Ethnology (Part 2), Indian Land Cessions (1896–97). Thus, Royce Areas 443 and 468 identify the land shown on Royce's maps 443 and 468 respectively. *See Prairie Band of the Pottawatomie Tribe of Indians v. United States,* 215 Ct.Cl. 1, 4 n. 1, 564 F.2d 38, 39 n. 1 (1977).

South Dakota. In the 1868 Treaty, however, the Federal Government inadvertently incorporated the Ponca Tribe's reservation, along with portions of the 1854 ceded Ponca tribal land, into the plaintiff's Great Sioux Reservation.[6] *See Ponca Tribe of Oklahoma v. United States,* 20 Ind.Cl. Comm. 272, 274 (1969).

The Court of Claims has previously noted that the Federal Government committed an "extraordinary blunder by including the Ponca reservation lands in the 1868 Sioux grant." *Ponca Tribe of Indians of Oklahoma v. United States,* 183 Ct.Cl. 673, 678 (1968). The Poncas were neither parties to the 1868 Treaty nor aware that the Federal Government had given their land to another tribe. *Ponca Tribe of Indians of Oklahoma v. United States, supra,* 183 Ct.Cl. at 683. Upon remand by the Court of Claims, the Indian Claims Commission awarded the Ponca Tribe approximately $1.9 million, less offsets, for their reservation land which was inadvertently transferred to the Sioux under the 1868 Treaty. *Ponca Tribe of Oklahoma v. United States, supra,* 20 Ind.Cl.Comm. at 307, 307(a), 307(b).

### B. Royce Areas 443 and 468.

In addition to the Ponca tribal land, the Federal Government also conveyed to the plaintiff two tracts of land, comprising 627,806 acres located east of the Missouri River, which were acquired from the Yankton Sioux Tribe [7] under the Treaty of April 19, 1858, 11 Stat. 743. These two tracts are more commonly known as Royce Areas 443 and 468. The defendant now seeks an offset for the value of the Royce acreage mistakenly incorporated into the Great Sioux Reservation.

### C. Seven Percent Interest Land.

The third and final land issue involves a seven percent interest in the Sioux Fort Laramie land ceded to the United States by the Yankton Sioux Tribe under the above-mentioned Treaty of April 19, 1858, 11 Stat. 743.

The seven percent land issue involves three treaty transactions occurring in 1851, 1858 and 1868. In the 1851 Treaty of Fort Laramie (1851 Treaty), 11 Stat. 749, 2 Kapp. 594, the United States recognized that the "Sioux or Dahcotah Nation" possessed title to approximately 60 million acres of land in what is now North Dakota, South Dakota, Nebraska, Wyoming and Montana. *See Sioux Tribe v. United States,* 205 Ct.Cl. 148, 155, 500 F.2d 458, 460 (1974). The signatories for the Sioux Nation, signing the 1851 Treaty, represented many Sioux tribes. Seven years later, one of the signatory tribes, the Yankton Sioux Tribe, ceded its entire interest in its vast tribal land to the Federal Government under the Treaty of April 19, 1858, 11 Stat. 743. Ten years later, in the Treaty of April 29, 1868, 15 Stat. 635, the Federal Government incorporated portions of these ceded Yankton Sioux land into the Great Sioux Reservation.

The defendant argues that, by incorporating the ceded land into the plaintiff's Reservation, the defendant granted the plaintiff the same interest which the defendant had earlier acquired from the Yankton Sioux Tribe. The Indian Claims Commission and the Court of Claims have previously determined that the Yankton Sioux Tribe possessed and ceded to the Federal Government a seven percent inter-

---

6. The plaintiff remained in possession of the Ponca Tribe's land until the Act of March 2, 1889, 25 Stat. 888, which broke apart the Great Sioux Reservation, confining the Sioux tribal members to two reservations and opening the surrounding land for non-Indian settlement. *See Ponca Tribe of Oklahoma v. United States, supra,* 20 Ind.Cl.Comm. at 274.

7. During the mid-1800's, the Yankton Sioux Tribe was located in what is now Iowa and South Dakota. The plaintiffs, in the instant

case, are descended mainly from the Teton and Yanktonai tribes, who, during the mid-1800's, were located to the north and west of the Yankton Tribe in what is now North and South Dakota. *See Sioux Tribe of Indians v. United States,* No. 74 (Ct.Cl. Mar. 22, 1982) (Defendant's Statement of Precise Offsets Due, at 5). The Yankton Sioux Tribe is not a party to this litigation and is not considered a part of the western or Teton Sioux Indians.

est in the land that made up the Great Sioux Reservation. *United States v. Sioux Tribe, supra,* 222 Ct.Cl. at 436, 616 F.2d at 494. Thus, the defendant claims it is entitled to offset its seven percent interest in the Great Sioux Reservation, which was previously ceded to it by the Yankton Sioux and inadvertently included within the Great Sioux Reservation.

## II. Land Adjustment Offset

This Court, therefore, must address three issues in deciding this motion for summary judgment:[8]

(1) whether to allow an offset for land the defendant mistakenly transferred to the plaintiff and which the plaintiff unknowingly accepted;

(2) if an offset is allowed, the nature and type of the offset which is applicable to such a transfer—a payment on the claim offset or a gratuitous offset; and

(3) the appropriate standard of offset valuation to be placed on the inadvertently transferred land.

The defendant urges this Court to grant an offset for the added land as a payment on the claim. The plaintiff argues, however, that an offset for the added land should be denied because such land was not an element of consideration which is critical for an offset to be considered a payment on the claim.

The Indian Claims Commission Act, 25 U.S.C. § 70a, provides in relevant part:

In determining the quantum of relief the Commission shall make appropriate deductions for all payments made by the United States on the claim, and for all other offsets, counterclaims, and demands that would be allowable in a suit brought in the Court of Claims under section 1491 of title 28; *Provided,* That expenditures for food, rations, or provisions shall not be deemed payments on the claim. The Commission may also inquire into and consider all money or property given to or funds expended gratuitously for the benefit of the claimant and if it finds that the nature of the claim and the entire course of dealings and accounts between the United States and the claimant in good conscience warrants such action, may set off all or part of such expenditures against any award made to the claimant * * *.

25 U.S.C. § 70a (1976).

■ This Court has a long history of allowing an offset for property that the Federal Government has expended on behalf of Indian tribes. *Ponca Tribe of Indians of Oklahoma v. United States,* 183 Ct.Cl. 673 (1968); *Kickapoo Tribe of Kansas v. United States,* 178 Ct.Cl. 527, 372 F.2d 980 (1967); *Peoria Tribe of Indians of Oklahoma v. United States,* 169 Ct.Cl. 1009 (1965). While not all money or property expended on a tribe's behalf qualifies as an offset, *United States v. Pueblo de Zia,* 200 Ct.Cl. 601, 608, 474 F.2d 639, 643 (1973), Congress plainly contemplated offsetting expenditures absent a showing of irregularity or unfairness. *United States v. Emigrant New York Indians,* 177 Ct.Cl. 263, 287–88 (1966).

The defendant's land offset is clearly the type of offset which Congress contemplated allowing in enacting the Indian Claims Commission Act. First, the plaintiff does not deny receiving the land the Federal Government mistakenly conveyed to it. Second, the plaintiff benefited from the use of the added land during the 30-year existence of the Great Sioux Reservation. Third, the plaintiff profited by any subsequent sale of the land. Finally, the Federal Government expended public funds both in acquiring the added land and in paying the related judgment awards. *See Yankton Sioux Tribe v. United States,* 43 Ind.Cl. Comm. 1, 72–73 (1978) (Yankton Sioux Tribe awarded $15,269,924.83); *Ponca Tribe of Indians of Oklahoma v. United States,* 28 Ind.Cl.Comm. 335, 350 (1972) (Ponca Tribe of Indians awarded $1,004,589.49, plus interest of $174,327.06). Clear-

---

**8.** The U.S. Court of Claims specifically left to the trial judge's discretion to determine in the first instance what the amount of offsets, if any, should be. *United States v. Sioux Tribe, supra,* 222 Ct.Cl. at 433, 616 F.2d at 492.

ly, the defendant is now entitled to an offset for that land which was inadvertently added to the Great Sioux Reservation.

■ Since this Court believes that such an offset should be allowed to the Federal Government, the Court must now determine the nature and type of offset applicable to the subject land. The Federal Government contends that the land offset should be considered a payment on the claim. The plaintiff argues, however, that, at best, the added land should be treated as a gratuitous offset.

The Indian Claims Commission and the Court of Claims have previously allowed a land-related offset as a payment on the claim offset. *See Ponca Tribe of Indians of Oklahoma v. United States,* 183 Ct.Cl. 673 (1968). However, the Court has also previously allowed a land-related offset as a gratuity. *See Kickapoo Tribe of Kansas v. United States,* 178 Ct.Cl. 527, 372 F.2d 980 (1967); *Peoria Tribe of Indians of Oklahoma v. United States,* 169 Ct.Cl. 1009 (1965).

The criteria involved in determining whether an offset is a payment on the claim or a gratuity is discussed at length in *Sioux Tribe of Indians v. United States, supra,* 6 Cl.Ct. at 95 (Summary Judgment Opinion—I); *Sioux Tribe of Indians v. United States,* 7 Cl.Ct. 468 at 480–81 (1985) (Summary Judgment Opinion—II). As a result, such criteria are only briefly discussed below.

Generally, payment on the claim offsets are Federal Government treaty obligations undertaken in exchange for the benefit received (*i.e.,* the cession of vast tribal land). In order to be offset as a payment on the claim, the defendant must have conveyed the subject land for the exclusive benefit of the plaintiff in return for the specific treaty concessions made by the plaintiff. 25 U.S.C. § 70a (1976). *See Prairie Band of Pottawatomie Tribe of Indians v. United States,* 215 Ct.Cl. 1, 9–17, 564 F.2d 38, 42–47 (1977). *See also Sioux Tribe of Indians v. United States, supra,* 6 Cl.Ct. at 95 (Summary Judgment Opinion—I).

■ Gratuitous offsets are not tied to any legal, moral or treaty-related obligation. *See United States v. Cherokee Nation,* 200 Ct.Cl. 583, 600, 474 F.2d 628, 638–39 (1973). They are, instead, expenditures for which the Government "has not assumed any obligation, direct or incidental, as party to the treaty or * * * pursuant to the intention of the treaty." *Sioux Tribe of Indians v. United States,* 105 Ct.Cl. 725, 793, 64 F.Supp. 312, 327, *vacated and remanded,* 329 U.S. 685, 67 S.Ct. 364, 91 L.Ed. 602 (1946), *aff'd on reh'g,* 112 Ct.Cl. 50, 78 F.Supp. 793 (1948), *cert. denied,* 337 U.S. 908, 69 S.Ct. 1046, 93 L.Ed. 1720 (1949). Gratuitous offsets are never undertaken as treaty-related consideration. Further, in order to be offset, gratuities must be expended for the benefit of the entire tribe, rather than individual tribal members. 25 U.S.C. § 70a. *See also Kickapoo Tribe of Kansas v. United States, supra,* 178 Ct.Cl. at 536, 372 F.2d at 986; *United States v. Kiowa, Commanche and Apache Tribes of Indians,* 143 Ct.Cl. 545, 550, 166 F.Supp. 939, 943 (1958), *cert. denied,* 359 U.S. 934, 79 S.Ct. 650, 3 L.Ed.2d 636 (1959); *Red Lake, Pembina and White Earth Bands v. United States,* 9 Ind.Cl. Comm. 457, 517, *aff'd in part, rev'd in part* and remanded, 164 Ct.Cl. 389 (1964). The allowance of gratuitous offsets is not mandatory, but rather, is left to the discretion of the court. In deciding whether to allow an offset for gratuities, courts must consider whether "the entire course of dealings and accounts between the United States and the claimant in good conscience warrants such action." 25 U.S.C. § 70a (1976). *See Sioux Tribe of Indians v. United States,* 222 Ct.Cl. 421, 616 F.2d 485 (1980); *United States v. Assiniboine Tribes of Indians,* 192 Ct.Cl. 679, 695–96, 428 F.2d 1324, 1333 (1970). *See also Sioux Tribe of Indians v. United States,* 7 Cl.Ct. 468 (1985) (Summary Judgment Opinion—II). At the same time, gratuities must not fall within the scope of the gratuitous exceptions to the Indian Claims Commission Act. *Id.*

■ Here, the plaintiff argues that the added land fails to qualify as a payment on the claim because the circumstances surrounding its inadvertent transfer precludes it from qualifying as consideration. While payment on the claim offsets generally relate to the consideration given by the Federal Government in exchange for the benefits received under a treaty, consideration is not a requisite element for valid payment on the claim offsets. Treaties involve many contract principles, including the elements of bargained for exchange, inducement, and consideration. However, treaties are not totally analogous to contracts. Particularly, courts have found expenditures and obligations to be valid payments on the claim, as long as those expenditures and obligations relate to the treaty and the claim upon which the treaty is based. *See, e.g., Ponca Tribe of Indians of Oklahoma v. United States,* 183 Ct.Cl. 673 (1968); *Sioux Nation of Indians v. United States,* 33 Ind.Cl.Comm. 151, 219 (1974), *rev'd on other grounds,* 207 Ct.Cl. 234, 518 F.2d 1298, *cert. denied,* 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975).

In *Prairie Band of the Pottawatomie Tribe of Indians v. United States,* 215 Ct.Cl. 1, 564 F.2d 38 (1977), the Court of Claims was called on to construe a 1974 amendment to the Indian Claims Commission Act.[9] In rendering its decision, the Court of Claims indicated that consideration is but one type of payment on the claim:

> Over all the twenty-odd years prior to the 1974 amendment, the Commission regularly deducted treaty-prescribed consideration (if paid) from its award of the value of ceded land (or other property) to the extent the award was more than the consideration—and that seems to have been done under the original provision for mandatory deduction "for all payments made by the United States on the

claim," since there is and was no separate provision for offset of "consideration." "Payment on the claim" was, it is plain to us, the normal statutory basis for the deduction of "consideration payments," *as well as other types of payment relating to the claim on which the suit was brought.*

*Prairie Band of the Pottawatomie Tribe of Indians v. United States, supra,* 215 Ct.Cl. at 10–11, 564 F.2d at 43 (emphasis added and footnotes omitted). Continuing, Judge Davis stated that:

> Congress as a whole may very well have thought that *"consideration payments"* for sustenance *plus other comparable "payments on the claim"* would not amount to much *in toto.*

*Prairie Band of the Pottawatomie Tribe of Indians v. United States,* 215 Ct.Cl. at 17, 564 F.2d at 47 (emphasis added). *Cf. Nez Perce Tribe v. United States,* 24 Ind. Cl.Comm. 429 (1971).

In the instant case, the added land was part of the reservation the Federal Government granted the plaintiff in return for ceded tribal land holdings. It was part of the language of the Treaty itself. *See* Article II. Moreover, the Federal Government has expended funds in originally acquiring the added land and in paying subsequent judgment awards. *See Yankton Sioux Tribe v. United States, supra,* 43 Ind.Cl.Comm. at 72–73; *Ponca Tribe of Indians of Oklahoma v. United States, supra,* 28 Ind.Cl.Comm. at 350. The plaintiff enjoyed exclusive use of and title to the land during the all too brief existence of the Great Sioux Reservation. Further, the plaintiff has now recovered the fair market value of this land under the $43 million judgment awarded by the Indian Claims Commission. *See Sioux Tribe v. United States,* 42 Ind.Cl.Comm. 257 (1978). Clearly then, the land adjustment offset is allowable as a payment on the claim.[10]

---

9. The Amendment to the Indian Claims Commission Act provided that "expenditures for food, rations, or provisions shall not be deemed payments on the claim." 25 U.S.C. § 70a (1976).

10. The defendant argues that this Court may also grant an offset under the provision of the Indian Claims Commission Act allowing deductions of "all other offsets, counterclaims, and demands that would be allowable in a suit brought in the Court of Claims under section

Notwithstanding the above decision to allow the land adjustment offset as a payment on the claim, the Court has carefully considered the merits of the plaintiff's argument that the transfered land interests constituted a gratuity. In this regard, the Court has noted that the land conveyed under the 1868 Treaty was part of a whole transaction intended to benefit the entire tribe, not just individual tribal members.

In *Sioux Tribe of Indians v. United States*, 7 Cl.Ct. 468 (1985) (Summary Judgment Opinion—II), this Court ruled that all gratuitous offsets must be denied the Federal Government, since its course of dealings throughout history did not, in good conscience, warrant the allowance of such offsets. In reaching this decision, the Court examined the entire history of the relations between the Federal Government and the Sioux Tribe. *Id.* Here, however, the land transfer at issue was embodied within the 1868 Treaty transaction. As such, the inadvertant transfer was not a part of the Federal Government's dishonorable dealings over the course of time, but rather, a part of the treaty transaction itself. Thus, even assuming that the inadvertent transfer of the subject land constituted a gratuity rather than a payment on the claim, this Court would allow the Federal Government to offset the land value from the plaintiff's land valuation award as an exception to its decision in Summary Judgment Opinion—II. *Sioux Tribe of Indians v. United States*, 7 Cl.Ct. 468 (1985).

▇▇▇ Such a determination is emminently fair and reasonable. The Federal Government compensated the Ponca Tribe of Indians for lost tribal land, *Ponca Tribe of Oklahoma v. United States*, 20 Ind.Cl. Comm. 272 (1969); *Ponca Tribe of Indians of Oklahoma v. United States*, *supra*, 28 Ind.Cl.Comm. at 350; and compensated the Yankton Sioux Tribe of Indians for land ceded to the Federal Government. *See Yankton Sioux Tribe v. United States*, *supra*, 43 Ind.Cl.Comm. at 72–73. Denying the defendant the opportunity to offset these expenditures while, at the same time, allowing the plaintiff to have benefited from possession of this land, would be grossly inequitable and result in unjust enrichment.[11] Therefore, regardless of whether the inadvertent transfer of this land constituted a payment on the claim or a gratuity, this Court, in its discretion, believes that the Federal Government is entitled to an offset for all of the land at issue herein.

### III. Offset Valuation

▇▇▇ Finally, this Court must determine the appropriate measure of offset valuation

---

1491 of title 28." 25 U.S.C. § 70a (1976). The Court of Claims addressed exactly this argument in a footnote in *Prairie Band of the Pottawatomie Tribe of Indians v. United States*, *supra*, 215 Ct.Cl. at 11 n. 12, 564 F.2d at 43 n. 12. The Court of Claims registered several objections to the defendant's arguments invoking the general jurisdictional statute. While this Court feels the defendant's argument here has considerable merit, it reads as dispositive footnote 12 of *Pottawatomie*. In any event, since this Court has decided to grant a land adjustment offset as a payment on the claim, the merits of the defendant's argument need not be addressed.

11. As a general rule, the U.S. Claims Court lacks general equity jurisdiction. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). However, the Indian Claims Commission Act established jurisdiction over:

(1) [C]laims *in law or equity* arising under the Constitution, laws, treaties of the United States, and Executive orders of the President; (2) all other claims *in law or equity,* including those sounding in tort, * * * (3) claims which would result if the treaties, contracts, and agreements between the claimant and the United States were revised on the ground of fraud, duress, unconscionable consideration, mutual or unilateral mistake, whether of law or fact, *or any other ground cognizable by a court of equity;* (4) claims arising from the taking by the United States, * * * (5) claims based upon fair and honorable dealings *that are not recognized by any existing rule of law or equity.*

25 U.S.C. § 70a (1976) (emphasis added). Thus, this Court, standing in the shoes of the now defunct Indian Claims Commission, has acquired the equitable power to allow an offset for land claims in Indian cases originally filed under the authority of the Indian Claims Commission Act.

to be placed upon the added land. The plaintiff argues that the offset cannot exceed the amount which the Federal Government originally paid for the land. The defendant argues, however, that the Court should award an offset according to the fair market value of the land at the time of the 1868 Treaty transaction.

As a general rule, land-related offsets are usually valued in accordance with the original purchase price of the land. *United States v. Ponca Tribe of Indians of Oklahoma,* 197 Ct.Cl. 1065, 1067 (1972); *Ponca Tribe of Indians of Oklahoma v. United States,* 183 Ct.Cl. 673, 689 (1968); *see also Kickapoo Tribe of Kansas v. United States, supra,* 178 Ct.Cl. at 534–35, 372 F.2d at 985–86. This "price paid rule," however, has been replaced by a "fair market value rule," whenever necessary to insure equity and fairness. *See Prairie Band of Pottawatomie Tribe of Indians v. United States,* 33 Ind.Cl.Comm. 394, 404 (1974), *aff'd,* 215 Ct.Cl. 1, 564 F.2d 38 (1977); *Peoria Tribe of Indians of Oklahoma v. United States,* 9 Ind.Cl.Comm. 274, 292 (1961); *Peoria Tribe of Indians of Oklahoma v. United States,* 12 Ind.Cl. Comm. 392, 396 (1963), *modified and aff'd,* 169 Ct.Cl. 1009 (1965). In order to achieve fairness, courts independently consider the particular facts and circumstances of each case. *Prairie Band of the Pottawatomie Tribe of Indians v. United States, supra,* 33 Ind.Cl.Comm. at 404.

■ Under the particular circumstances of this case, the fair and equitable measure of valuation to be applied is the fair market value of the land at the time of the 1868 Treaty. While the purchase price standard is designed to prevent the defendant from profiting at the plaintiff's expense, such a danger does not exist in the instant case. Here, the plaintiff will ultimately receive the 1868 fair market value for the land ceded to the Federal Government under the 1868 Treaty. Accordingly, the defendant is entitled to the fair market value of the land it conveyed to the plaintiff in the same transaction. Since the Federal Government is to be held accountable for the benefits it reaped under the 1868 Treaty, equity requires that a similar burden be placed upon the plaintiff in this action. *See Kickapoo Tribe of Kansas v. United States, supra,* 178 Ct.Cl. at 534, 372 F.2d at 985.

The Indian Claims Commission determined the value of the 33,869,000 acres of tribal land the Sioux ceded to the Federal Government under the 1868 Treaty to be $24,790,000. *Sioux Tribe v. United States,* 38 Ind.Cl.Comm. 469, 487–88, 530 (1976). This amounts to $.73 per acre. The land involved herein, that is, the land the Federal Government inadvertently transferred to the plaintiff, is adjacent to the land ceded to the Federal Government by the Sioux in the 1868 Treaty and valued at $.73 per acre by the Indian Claims Commission. Neither party has seriously contested the $.73 per acre valuation, and the Court finds no good reason to deviate from that valuation in this case. Thus, the same standard of $.73 per acre is applicable to the land the defendant conveyed to the plaintiff.

The transferred Ponca land comprises 1,314,644 acres. The transferred Royce areas 468 and 443 comprise 418,416 acres and 209,390 acres, respectively. Together the Ponca land and Royce areas total 1,942,450 acres. When the $.73 per acre figure is applied to this land, it results in an offset award of $1,417,988.50.

The seven percent interest in the Sioux Fort Laramie land must be calculated separately. The Great Sioux Reservation originally comprised 26,439,000 acres. After deducting the 1,314,644 Ponca land acreage and the 627,806 Royce area acreage, the remaining acreage totals 24,496,550 acres. Seven percent of this remaining acreage totals 1,714,758.50 acres. The fair market value of this seven percent interest, at $.73 per acre, equals $1,251,773.70.

Thus, the Federal Government is entitled to a total offset value for the added land of $2,669,762.20.

## CONCLUSION

For the reasons cited herein, the defendant's motion to allow an offset for land

inadvertently transferred to the plaintiff pursuant to the Treaty of April 29, 1868, 15 Stat. 635, is granted. The defendant is hereby allowed an offset in the total amount of $2,669,762.20. This amount will be deducted from the plaintiff's interlocutory land valuation award of $43,949,700, leaving a balance due the plaintiff at this point of $41,279,937.80.

United States Claims Court.

